## ROBERTSON *vs.* SMITH.

1. If one signs or endorses a blank bill or note, and parts with its possession, with the view of its being filled up and made a negotiable security, and it afterwards and before maturity comes to the hands of a *bona fide* holder for a valuable consideration without notice, he will be held to its payment, without regard to the authority of the person by whom the blank was filled.

2. Where the acts of parties to a transaction are evidence against third persons, their declarations, if they are so inseparably connected with the acts as to constitute a part of the *res gestæ*, are also admissible.

ERROR to the Circuit Court of Mobile. Tried before the Hon. John Bragg.

THIS was an action of assumpsit by the plaintiff against the defendant in error, as the first endorser of a promissory note for five thousand dollars, made by Horatio L. Spooner in favor of the defendant, dated the 21st Dec. 1845, and payable twelve months after date, at the Planters Bank of Tennessee, at Nashville. The note was endorsed by the defendant to A. H. Jones, by said Jones to James Perrine, and by said Perrine to the plaintiff. The plaintiff having offered the note in evidence, and proved demand of payment and notice to the defendant, the defendant introduced evidence conducing to show that the said note was signed by Spooner, and endorsed by the defendant and Jones, with the date, time of payment, and perhaps the name of the payee left blank, and in that condition was handed by Spooner to John S. Rhea, one of the firm of Rhea, Sykes & Co., of Mobile, to be discounted for the accommodation of the maker in one of the banks of the State of Tennessee; that an effort was made to procure its discount, which failed, and the note was then filed away among the papers of Rhea, Sykes & Co.; that Rhea, Sykes & Co. afterwards became insolvent, and removed from the State, leaving one Horton as their agent in winding up their business; that at the time of their removal they were indebted to James Perrine, who was also liable for them to the extent of about ten thousand dollars; and that Perrine, after they left the State, called on the said Horton to procure security for what was due him and indemnity against his said liability, when

Horton, having previously filled up the blanks in the note without any other authority than that derived from his general agency, delivered it to him for that purpose. There was evidence tending to show that at the time the note was handed to Perrine, Horton informed him that he did not know whether there was any thing due upon it or not; that he did not find it entered on the books of Rhea, Sykes & Co; that Perrine must inquire of the parties to see what was due; and it was to stand as security only for the balance that might be due on it. It was further shown that Perrine had transferred the note to the plaintiff before its maturity; that this transfer was made in a settlement between the plaintiff and Perrine, the latter taking from the former in part consideration for it two notes for upwards of two thousand dollars each, payable at a day subsequent to that of the maturity of the note transfered; and that one of these notes given by the plaintiff had been assigned by Perrine to one Zunts in payment for a house, and been paid by the plaintiff to him. In connection with this evidence, the plaintiff offered to prove by a witness, who was present at the settlement between Perrine and the plaintiff, that Perrine in that settlement was found to be indebted to the plaintiff for negro hire collected by him as the agent of the plaintiff, and that the balance of the consideration for the note sued on, after deducting the amount of the two notes given by the plaintiff to Perrine, was the amount so found due by Perrine to the plaintiff. The witness not professing to know anything on the subject, except what he heard the parties to the settlement say at the time it was made, the defendant objected to the evidence offered as inadmissible and the court sustained the objection. The plaintiff proved that he had one or more slaves in Mobile that were hired out by Perrine as his agent, and then offered to prove that the settlement in which the transfer of the note was made was of the business of Perrine's agency. The defendant objected to this evidence, because the witness knew nothing, except what he heard the parties say, and the court sustained the objection. It was shown that Perrine at the date of this settlement was in embarrassed circumstances, and there was no evidence that he had paid any of the liabilities against which the transfer of the note sued on was intended to indemnify him. The plaintiff's counsel requested the court to charge the jury that if they believed from the evidence that the plaintiff was a

holder of the note for a valuable consideration before maturity, without notice of the facts put in evidence by the defendant, he was entitled to recover, although Horton had no authority to fill up the blanks, and transfer the note to Perrine. This charge the court refused to give, and to its refusal so to charge and its several rulings on the evidence the plaintiff excepted, and now assigns them as error.

HOPKINS & CAMPBELL, for the plaintiff:

1. A negotiable note, complete in all its parts, is available in the hands of a *bona fide* holder, though it has been stolen from the owner before reaching the holder.—Burr. 452,1516.

2. A person who makes a note incomplete in one or more of its material parts, leaving a blank for those parts, confers a general authority upon a *bona fide* holder to fill those blanks.—3 Barb. (S. C.) R. 374.

3. A person who gives a blank to another to be used for the purpose of being filled up as a promissory note will be liable on the note, though it be written by a person unauthorised, and by one who obtained it fraudulently, if it comes to a *bona fide* holder.—4 Mass. 45; 3 Ala. 188; 1 ib. 18.

4. The only case in which the *bona fide* holder is to be defeated is, where he has given no trust and reposed no confidence in making his blank. If the person whose signature is abused has put it forth with a view of its being used to make a negotiable security, he will be bound, no matter how, or by whom the security shall be made. The principle of all these cases is the same and is fully expounded by this court in 3 Ala. 188. The present is not an exception to the principle laid down in the 3 Ala., but shows the limitation of the principle. This boundary is fully explained in 5 Ala. 370.

5. The evidence offered by the plaintiff was competent and should not have been rejected.

WM. G. JONES & PHILLIPS, for the defendant:

1. The court charged in substance, that if Horton had no authority to fill up the blanks in the note, the plaintiff could not recover, but if Horton was a general agent of the firm of Rhea, Sykes & Co., and with power to transfer their assets, and found this note among their papers, and transfered it *bona fide* to Per-

rine, the plaintiff was entitled to recover. This charge was really beneficial to the plaintiff. The court would not give the charge in unqualified terms as asked by the defendant, but qualified it by charging in addition, that if Horton was the general agent of Rhea, Sykes & Co., and had authority to transfer their assets, and found this note in blank among their papers, he had a right to fill up the blanks and transfer the note to Perrine, and the plaintiff had a right to recover. Under this charge the jury found for the defendant. Of course the jury must have found the fact that Horton had no authority to fill the blanks. Then his filling up the blanks was certainly unauthorised, and we insist was a forgery.—See Chitty on Bills, (9th Amer. ed.) 747-8-9, and the cases there cited.

Under such circumstances, even a *bona fide* holder, for a valuable consideration, without notice, and taking the note in the usual course of trade, cannot recover on it.—Chitty on Bills, (9th Amer. ed.) 204-5; Masters v. Miller, 4 Dunf. & East. 320; same case, affirmed in the Exchequer Chamber, 2 H. Bl. 141; Goodman v. Eastman, 4 N. Hamp. R. 455; Stephens v. Graham, 7 S & R. 505; Woodworth v. The Bank of America, 19 Johns. R. 391; Nazro v. Fuller, 24 Wend. 374; Mead v. Young, 4 Dumf. & East. 20; Nance v. Lary, 5 Ala. 370.

2. This case does not come within the influence of the principle that the maker or endorser of a note in blank, who places it in the hands of another to be filled up or used in a particular manner, is held liable on it to a *bona fide* holder, although it may have been fraudulently filled up or used by the person in whose hands it was placed. If Rhea, or Rhea, Sykes & Co., had fraudulently filled up these blanks, or fraudulently put the note in circulation, a *bona fide* holder for value, taking it in the usual course of business and not under suspicious circumstances, might have recovered on it against the defendant. On what principle does the holder recover in such a case? On the principle that the defendant, having trusted a third person with his blank signature, thereby authorises him to fill up and use it, and must be bound by the act of his agent though fraudulent. Here however, neither Spooner nor the defendant ever trusted Horton with their blank; nor did Rhea, Sykes & Co. authorise Horton to fill up the blanks or put the note in circulation. There is no principle on which the defendant can be made responsible by Horton's act,

for he never trusted Horton, nor authorised him to act for him. If I leave my blank signature with a friend for any purpose and it be stolen from him, or taken from him, and filled up with a bill or note, no case has ever decided that I would be bound to pay it even to a *bona fide* holder for value. All the decisions are directly to the contrary, as sufficiently appears from the authorities above cited. This is precisely the case under consideration, and the court below would have been justified in charging even more strongly. than it did in favor of the defendant.—Nance v. Lary, 5 Ala. 370, and cases cited, *supra.*

3. Under the pleadings and evidence, it was necessary to the plaintiff's recovery that he should prove the consideration he gave for the note. To do this he offered to prove by a witness what was said and admitted by Perrine, as to Perrine's indebtedness to him at the time Perrine endorsed the note to him. This was clearly "*res inter alios acta,*" and also heresay, and on both grounds clearly inadmissible. This court has decided in many cases that when it is necessary to prove the consideration of a deed, the recitals of indebtedness in the deed itself are no evidence of consideration. It is not even *prima facie* evidence, nor are the admissions of the grantor made at the time of executing the deed evidence of consideration.—Branch Bank at Decatur v. Kinsey, 5 Ala. 9; McCain v. Wood, 4 ib. 258; Falkner v. Leith & Jones, 15 ib. 9. The principle of these cases is applicable to the case under consideration, and decisive of it. If Perrine in making his endorsement to the plaintiff had recited in it that it was in consideration of his indebtedness to the plaintiff, such written recital would not have been evidence. *A fortiori*, his declarations or admissions are not evidence. Besides Perrine was interested in the note, and in the suit, and incompetent to testify as a witness without his release. *A fortiori*, his statements were incompetent testimony in favor of the plaintiff.—Kennon v. McRae, 7 Por. 389 ; Perry v. Graves, 12 Ala. 246, is decisive on this point.

DARGAN, C. J.—The facts upon which the liability of the defendant depends, appear to be these: H. N. Spooner, being desirous to raise money, signed his name to a note for five thousand dollars, leaving the date and time of payment, and probably the name of the payee, in blank. The note in this

condition was endorsed by the defendant and one Jones, and then delivered to Rhea, Sykes & Co., to be discounted at one of the Banks of Tennessee, for the accommodation of Spooner. The note was not discounted, and therefore was retained by Rhea, Sykes & Co., who, however, did not claim it as their own, or look upon it as creating any obligation on the part of the maker or endorsers. Rhea, Sykes & Co. afterwards failed and left the State, being indebted to James Perrine, who was also under liabilities on their account. After Rhea, Sykes & Co. left the State, Perrine applied to one Horton, their clerk and agent, for indemnity, who filled up the blanks, inserting the date and time of payment, and probably the name of the payee, and passed the note to Perrine, as a security for the debt due him and the liability he was under for Rhea, Sykes & Co., but told him at the time, that he did not know whether any thing was due to Rhea, Sykes & Co. on the note or not, and that he must inquire of the parties to the note. It was shown, also, that Rhea, Sykes & Co. never authorised Horton to transfer the note, unless such authority could be implied from the fact that he was their clerk and agent to settle their affairs. Perrine endorsed the note to the plaintiff, who claims to be a *bona fide* holder for a valuable consideration without notice; and the question is, if he be such, is he entitled to recover?

It is not denied by the defendant's counsel but that the plaintiff could recover, conceding him to be a *bona fide* holder, if Rhea, Sykes & Co. had transferred the note to Perrine. But they take a distinction between the act of Horton in filling up and transfering the note, and the act of Rhea, Sykes & Co. had it been done by them, and insist, that as no confidence was placed in Horton by the parties to the note, nor authority given him, they cannot be bound by his act. We, however, think that the rule of law is this; that if one signs his name to a blank bill or note, intending that it should be filled up for a particular purpose, and thereby become a valid security, and parts with its possession, and it gets into market, and finally into the hands of a *bona fide* holder for a valuable consideration without notice, the maker must be held to its payment, without regard to the person who filled up the blanks. In the case of Coulstely v. Clarence, 2 M. & S. Rep., it appeared that the bill was drawn by the defendant in Jamaica, upon Henry Mann of London, leaving

a blank for the name of the payee. The bill was afterwards negotiated in England by one Vashon, who endorsed it to the plaintiff, and the plaintiff inserted his own name as payee. Lord Ellenborough said, that as the defendant had sent the bill into the world in this form, the world ought not to be deceived by it. The defendant, by leaving the blank, undertook to be answerable for it when filled up in the shape of a bill. In this case it did not appear to whom the defendant delivered the bill, nor whom he had empowered to fill it up; his liability was not therefore put upon that ground, but on the ground that he had permitted his blank bill to get into market, which gave any *bona fide* holder the right to fill it up. In the case of Putnam et al. v. Sullivan, 4 Mass. R. 45, the facts were, that one member of of a firm had left with a clerk of the house several blank notes, having the firm name signed to some as promissors, and others having the name of the firm written on the back as endorsers. The clerk was told to let the promissor of the note sued on have one of the blanks to renew a note, which the firm had endorsed for him, but instead of letting him have one, the promissor, by his fraudulent representations, procured four, and filled up the one on which the suit was brought for another purpose, but used one of the blanks for the purpose of extending the debt on which the firm was liable as endorsers. It was shown that the plaintiffs were *bona fide* holders of the note, and the court held they were entitled to recover.

Parsons, C. J., in delivering the opinion of the court, said: "This note was carried into market endorsed in blank, and it stands on the same footing as a note payable to bearer, or a bank note, which is transferable by delivery only; possession carries with it the property, and in such case the transfer may be made by any person, who by any means has obtained possession, whether by fraud, accident, or even robbery, and any holder having given a valuable consideration for the note, without notice of the fraud, accident, or robbery, may recover against the drawer, acceptor, or endorsor in blank." Again, in the case of Herbert v. Huie, 1 Ala. 18, the facts were, that the defendant gave his blank note to John G. Porter, to be filled up for one thousand dollars, for the accommodation of Porter & Ryan. Porter & Ryan passed off the blank to Ross & Ford, who had it filled up for five thousand dollars, and then passed it off to a

*bona fide* holder. It was objected that the maker had given Ross and Ford no authority to fill, up the note, nor had he reposed any confidence in them, and therefore he was not bound, but this court overruled the objection and held him liable.

The broad principle on which the maker or endorsers of blank bills or notes are held liable to a *bona fide* holder is this, that when one of two innocent persons must suffer, he who is most in fault must bear the loss. Let us apply this test to the parties in the case before us. The defendant permitted his name to go out on a blank note. It was entrusted to Rhea, Sykes & Co., for a special purpose, but that purpose failing, it was permitted to remain in their possession, that was neglect. Rhea, Sykes & Co., removing from the country, the note was left within the power of their clerk to pass it off. This too, was neglect, but the defendant is chargeable with it, for he put the note in their possession. Thus, through the neglect of the parties to the note, and those to whose custody they entrusted it, the note is thrown upon the market, and is purchased by a *bona fide* holder. Who is most in fault? The answer is plain; the one has been guilty of no neglect, the other has. He therefore must bear the loss.

It has, however, been contended that the evidence is not of such a character as to show that the plaintiff is a *bona fide* holder for a valuable consideration, without notice. With this question we have nothing to do in the present condition of the record. That will be a question for the jury upon another trial. The testimony was sufficient to warrant the charge requested, if it even had failed to satisfy the jury, that the plaintiff was a *bona fide* holder. Nor do we think it necessary to lengthen out this opinion by adverting to the authorities refered to by the counsel for the defendant in error, for we think they are inapplicable, and although the principles recognised in them cannot be denied, yet the case before us must turn on a different principle, and one which we think equally well settled.

After the defendant had closed his testimony, the plaintiff, for the purpose of showing that he had paid a valuable consideration for the note, proved that he and Perrine had a settlement in reference to the hire of some negroes, and that he gave Perrine his two notes for over two thousand dollars each, falling due after the note sued on, and the amount that Perrine was indebted to him made up the balance between the notes given by the plain-

tiff to Perrine and this note. The witness, however, who spoke of the settlement, and who was present when it was made, knew nothing of the amount due from Perrine to the plaintiff, except what was stated by the parties at the time of the settlement. The defendant objected to the admission of the parties made at the settlement, although the plaintiff offered other proof to show that Perrine as his agent had hired out his slaves, and had collected the hire. The objection was sustained and the admissions of the parties rejected.

It is not universally true, that the acts of third persons cannot be received as evidence against one who is not a party to them. For instance; in the case before us, to entitle the plaintiff to recover, he must show that he is a *bona fide* holder. This he cannot do without proof of a contract between himself and Perrine, by which he purchased the note and paid value for it. The contract and the payment are therefore facts, which are evidence against him, although he was not an actual party to the act; indeed no party at all, further than this, that the note which he had endorsed was one of the subjects of the contract. As the facts of the contract and the payment of the consideration are evidence, it follows that every thing, inseparably connected with these acts to make them complete, is evidence, for it is part of the act itself; that is, it is part of the *res gestæ*. For instance; when it was shown that Perrine had received money belonging to the defendant, in reference to which they had a settlement, the amount they ascertained to be due to the plaintiff in that settlement was part of the settlement itself, it was not, therefore, hearsay or mere declarations of third parties, but was part of the *res gestæ*, and therefore was admissible. It is not, however, to be understood that the admissions of one or both of the parties to the settlement, made after it was complete, or before it was begun, would be admissible evidence; but their admissions, made at the time it was going on for the purpose of ascertainig how the accounts stood between them, cannot be rejected. Such admissions, however, are by no means conclusive; they are liable to abuse, and must be weighed by the jury, who will give such credence to them as they think them justly entitled to. Let the judgment be reversed and the cause remanded.