## HOOKS vs. SMITH, et al.

1. In this State, an infant, whether he has a regularly appointed guardian or not, may in every case sue by his next friend.

2. Where a declaration contains several counts, one of which is good, a demurrer to the whole declaration, there being no misjoinder of counts, cannot be sustained.

3. A guardian cannot maintain case or trover in his own name against the hirer of a slave, belonging to his ward, and whose death has been caused by the tortious act of the hirer, although the contract of hiring was made with the guardian. The suit should be in the name of the ward.

4. If one hires a slave for a particular service, and afterwards appropriates him to a service different from that contemplated by the contract, and the slave is lost, the hirer is liable in trover for the value of the slave, although the loss was the result of inevitable casualty.

5. When a witness states that "the contract" (of which he was testifying) was evidenced by a promissory note, he must be understood to mean the entire contract, and parol evidence is not admissible to prove any of its terms, unless the absence of the note is first accounted for.

ERROR to the Circuit Court of Sumter. Tried before the Hon. Geo. Goldthwaite.

HUNTINGTON, for the plaintiff in error.

R. H. SMITH, for the defendants:

1. The pleas in abatement raise the question whether the infants should have been followed in the suit by their guardian, and not by *pro. ami.*—Clay's Dig. 336 § 130. For the doctrine on this subject, (independent of our statute,) see 1 Thomas' Coke, 171, note 29. Although this right was first given in England by statute, it has been long regarded as common law.—Thomas v. Dicke, 11 Verm. 273.

2. If a guardian has the ward's property in possession, and is divested and sues for the property itself, or if a note is given payable to him, the action must be in his name.—Chilton v. Cabbiness, 14 Ala. 447; Fuqua, guard'n. v. Hunt, 1 ib. 197. But even the case of Chilton v. Cabbiness, *(supra,)* is subject to qualifications.—Cox v. Williamson, 11 Ala. 343. When, however, a wrong is done to the property and the action is for

Hooks v. Smith et al.

damages, the suit must be in the name of the ward, by next friend. —Sutherland v. Goff, 5 Port. 508; McLeod v. Mason, 5 ib. 230; Croft v. Topp, 4 Ala. 238; 6 Port. 23; 5 Ala. 202; 2 ib. 406.

3. The demurrer to the declaration. was properly overruled, and the charge was correct.—Blick v. Briggs, 6 Ala. 689; McGowen v. Chapen, 2 Mur. 61; Gray v. Crocheron, 8 Port. 193-4; Hart v. Skinner, 16 Verm. 138; Story on Bailments, top p. 272, § 413; Homer v. Thwing, 3 Pick. 492-4; Horseley v. Branch, 1 Humph. 208; Spencer v. Pilcher, 8 Leigh, 565. The above cases show this declaration to be good, and establish that when there is a misapplication of the thing hired to a purpose forbidden by the contract, expressly or by implication, the party so acting is liable in case or trover, (a count in one of which, it is well known, may be joined with counts in the other.) The act is a conversion and subjects the party to respond in damages to the value of the slave. The demurrer is to all and not to each of the counts, and either being good, it must be overruled.

4. The evidence respecting the agreement was properly allowed. It contradicts no written agreement, for there was none in reference to the subject of enquiry. If the note had been produced, it would have afforded no higher evidence (no evidence at all,) as to how the slave was to have been employed— nothing in the note was of the issue or material to it. No writing can be necessary which gives no evidence of the matter. The rule insisted on arises from the principle that the best evidence must be had.—1 Ala. 121; 5 ib. 543-5; 11 ib. 1021-2; ib. 499; 1 ib. 357; ib. 41. The note being past due, the presumption is, plaintiff in error had paid it, and if so, this alone dispensed with notice and was ground to admit the proof.—8 Ala. 840, and authorities there cited.

PARSONS, J.—This action was brought by Edward W. Smith, Anna Smith, and Mary Amanda Smith, the two latter, who were infants, by their next friend Edward W. Smith, against the plaintiff in error. The declaration contains three counts in case, and one in trover.

It appears that one Joseph A. Smith had been the regular guardian of all of the plaintiffs, and that he continued to be the guardian of the two last until after the suit was brought, and

probably he is still their guardian. The defendant below filed three pleas in abatement, presenting the question whether the two plaintiffs, who were still infants, should not have sued by their guardian, instead of a next friend. There were demurrers to these pleas and the demurrers were sustained below, and the correctness of that is one of the questions in the record. The English law and the changes thereof may be stated thus—that at the common law infants were required to sue and defend by guardian.—Co. Lit. 135, *b*, note 220. That the law has not been altered as to this with respect to the manner of defending, that by the statute, Westm. 1, *c.* 48, infants were authorised to sue by *prochein ami* in an assize, and by Westm. 2, *c.* 15, in all other actions, which left it optional for them to sue by guardian or next friend, (Young v. Young, Cro. Ca. 86; Goodwin v. Moore, ib. 161,) but it was necessary that the guardian or *prochein ami* should be admitted by the court. Finally, however, it became sufficient if the count, in the case of a guardian, recited the fact of the admission, though there was no other record of it.—Rawlyn's case, 4 Coke, 53. And in the course of time it became sufficient if the admittance of the *prochein ami* appeared by the count alone.—Archer v. Frowde, 1 Strange, 304, and see Miles v. Boyden, 3 Pick. 213. This brings us to our act of 1807, but it is to be remembered that, after the statutes in England, an infant might sue either by guardian or *prochein ami.* By the act of 1807, "in every case, where persons who are within age may sue, their next friends shall be admitted to sue for them."—Clay's Dig. 336, § 130. We think, therefore, that an infant may, in every case, sue by his next friend, whether he have a guardian or not. It appears by the declaration that these infants sue by their next friend, Edward W. Smith, but it is not stated in either of the counts that he had been admitted by the court. That is not a question, however, which is raised by the pleas. They do not allege that the next friend was not admitted, but only that the suit should have been brought by the guardian, and not by the next friend. If the want of admittance had been objected, it would have been necessary for us to look into the case of Bethea v. McCall, *pro. ami,* 3 Ala. 449. We can see no error in sustaining the demurrer to the pleas in abatement.

2. There was a demurrer by defendant to the whole declara-

tion, which was overruled. If the three first counts were bad, the count in trover was good, and it is clear that, as there was one good count, it was proper to overrule a demurrer to the entire declaration, there being no misjoinder of counts in this case.

3. It appears that Joseph A. Smith, as the then guardian of all the plaintiffs, in January 1847, hired a slave belonging to his wards to the defendant below, for that year, for house service exclusively, but that in July of the same year, he put her to work on his plantation, in which business, as she was crossing a creek on a log, she fell in and was drowned. There was evidence that the slave, who was a female, had become rogueish, ill natured and unmanageable. This, we think, was no excuse for putting her into the field, when he had expressly stipulated to employ her in the house or as house servant only. But in the present case, we meet again with the question, whether the guardian, in his own name, or his wards, should have brought this suit. If it were an open question here, we would consider it, but it was settled by our predecessors in the case of Sutherland v. Goff, 5 Port. 508, and the decision then made has since been recognised in this court. It was held in Sutherland v. Goff, that a guardian cannot maintain assumpsit to recover the value of a slave, the property of the ward, who has been hired by such guardian to the defendant, and whose death is alleged to have been caused by the negligence of the hirer. There, it was held that as the matter lay in action, the ward must sue himself, although the contract, with its stipulations, was made with the guardian. In this case the matter lies more clearly in action, for the suit is founded on the tort. As the question, therefore, has been settled in this count, we decline opening it at this day on the ground of any doubts of our own, because we cannot see that the rights of the parties are to be injuriously affected by adhering in this case to what has been settled.

4. The defendant below having hired the slave for house service, afterwards put her as a hand upon the plantation, and in that business she lost her life. For this he was clearly liable for her value. It is said by Judge Story that " there is, on the part of the hirer, an implied obligation, not only to use the thing with due care and moderation, but also not to apply it to any other use than that for which it is hired," and he adds, that if the thing is used for a different purpose than that which was in-

tended by the parties, the hirer is responsible for all damages, and if a loss afterwards occurs, although by inevitable casualty, he will generally be responsible therefor.—Story on Bailments, § 413; Homer v. Thwing, et al., 3 Pick. 492; Wheelock v. Wheelright, 5 Mass. 104; Spencer v. Pilcher, 8 Leigh, 565; Horsely v. Branch, 1 Humph. 199. The cases cited show that if the thing hired be applied to a use for which it was not hired, and a loss occur, the hirer is responsible and trover is maintainable, because it is a conversion. It was held in the case last cited, that where a slave is hired for twelve months and converted by the hirer before the twelve months expired, the owner has a right of action in trover instantly upon the conversion, and need not wait until the expiration of the twelve months, otherwise when the conversion is by a third person. This is not a case in which the plaintiffs had no right of possession at the time of the conversion, and could not, therefore, bring trover; for when the defendant below violated his contract by applying the slave to a use for which he had not hired her, the case is as if there had been no contract. It would have been different if a third person had converted her. This action was brought after the term of the hiring had expired, but that is not material. It is not necessary to consider the three counts in case.

5. It appears by the bill of exceptions that " the plaintiffs introduced a witness to prove the terms upon which the negro mentioned in the declaration, had been hired to the defendant— the witness stated that the contract was evidenced by a promissory note made by the defendant at the time of hiring, by which note the defendant agreed to pay the guardian of the plaintiffs a certain sum of money, and to observe the conditions of hire— to observe the conditions of hire being the expression used in the note. This not being produced or its absence accounted for, the defendant moved the court to exclude from the jury the testimony of said witness going to show by parol what the contract of hiring really was, and what were its terms and conditions as agreed to by the defendant, but this motion was overruled by the court and the defendant excepted." It is our understanding of the bill of exceptions that the note contained the entire contract of hiring, and of course, all its terms and conditions. The witness stated that the *contract* was evidenced by a promissory note. We understand him to mean the whole contract of the

defendant, and therefore, we think, the note should have been produced or its absence accounted for.   If, contrary to what appears, the note did not contain the conditions of the hiring, the question of the admissibility of verbal testimony to prove them may arise in the case, but we will not decide it in advance, merely on a conjecture that it may have been so.   There was error in admitting parol evidence of the contract, and for this the judgment is reversed and the cause remanded.   We see no other error in the record.