## SEAY *vs*. MARKS.

1. When the contract of hiring is reduced to writing, and is general in its
terms, not restricting the employment of the slave to any particular busi-
ness, the hirer has the right to employ him in any business to which slaves
are usually put, not involving extraordinary peril to his life or health, or
to re-hire him to another to be so employed; and parol evidence is not
admissible to show that the employment of the slave was to be restricted
to a particular business.

2. If the hirer re-hires the slave to another, and he is killed while engaged
in a hazardous business not covered by the contract, even by inevitable
accident, the owner may regard such misuse of the slave as a conversion,
and recover his value from the first hirer, although the more immediate
cause of his death was the slave's disobedience.

Error to the Circuit Court of Dallas.

Tried before the Hon. NATHAN COOK.

This was an action on the case by Marks, to recover for a
tortious breach of the defendant's (plaintiff in error) duty aris-
ing out of a contract of hire of a slave named King, in these
words:

"$170. On or before the first day of January next, we
promise to pay E. W. Marks, or order, the sum of one hundred
and seventy dollars, for the hire of King until the 25th day of
December next, when he is to be returned, having first been
provided with a summer and winter suit of clothes, hat, blanket

and pair of shoes; the said Marks to pay physician's bills. Given under our hands, this 1st day of January, 1852.

(Signed)                          JESSE J. SEAY,

JOHN COMPTON,

GEO. F. MARBERRY."

Parol evidence was admitted to prove that Seay hired the slave to assist in carrying on a livery stable. The boy was so engaged for some time, when he was hired by the agent or superintendent of Seay for a short time, to one Nance, to assist him in rafting lumber down the Alabama river, but without the knowledge or consent of Marks, the owner. Nance directed him to cross the river at a certain ferry in going after the lumber, but the slave disobeyed his order and went to another crossing, and in his effort to go over in a skiff, the wind being high, was turned over in the river, and with five others was drowned.

It was proved to be customary for persons who hired slaves to re-hire them out by the day or week, and this custom was known to the plaintiff when he let Seay have the slave.

The court charged the jury that, if the condition of the contract of hiring was, that the slave should be employed in the hirer's livery stable, and he hired him to Nance to raft lumber, and he was drowned while engaged in the latter employment, the defendant was liable; but, if there were no such condition, then the hirer was bound to exercise such ordinary care and prudence, as respects the life and health of the slave, as ordinarily prudent masters or owners of slaves take of them.

Other charges were asked and refused, but it is not deemed necessary to notice them.

The admission of the parol proof, and the charges based upon it, are assigned for error.

T. WILLIAMS, for plaintiff in error:

1. The fact of agency must first be established before the declarations of a supposed agent can be received.—Phil. on Ev. 79, margl. page.

2. The attempt to hire the slave King by the supposed agent, the day prior to the actual hiring by the principal himself, and the conversations of the supposed agent at the time he proposed to hire, are no evidence of what the contract of hiring was by

Seay himself; and therefore there was no proof of any hiring of King to be employed in and about the livery stable.

3. If, in the contract of hiring, the slave King was not to be employed in and about the business of the livery stable of Seay "exclusively," then it was a general hiring, (vide Hooks v. Smith, 18 Ala. 341,) and the hirer would not be liable unless for gross negligence.

4. If the contract of hiring the slave King was general, and not special, then trover would not lie, as there would be no conversion, (18 Ala. 341;) and the action would not lie until the end of the hiring.

5. Contracts for hiring must be construed and modified by the usages, customs and general understanding of parties in the place where they are made.—Taylor v. Andrews, 16 La. R. 15. The custom at this place of hiring was admitted to be for the persons hiring slaves for a year to rehire them by the day in occasional jobs, and this was known to Marks, the owner.

6. The note given expresses the contract, and being in writing, specifying what the hirer was to do, and what the owner was to do, parol evidence was improperly admitted to show a special hiring.—Hooks v. Smith, 18 Ala. 343; ib. 236.

7. It is not denied, that the misuser of a bailment subjects the bailee to an action of trover, because such misuser is a conversion; nor is it intended to be denied, that the general rule for damages in trover is the value of the property at the time of the conversion. But it is insisted that where the thing bailed is a slave, (as in this case,) and the injury is not the immediate or necessary consequence of the misuser, but the result of the voluntary and reckless act of the slave after the misuser, and this act in direct violation of and contrary to the express orders of the bailee, that then the damages is not the value of the slave, but only for the conversion; and where the conversion was only temporary, or for a short period, as one day, as in this case, the damages would merely be nominal, because all the authorities show the value of the property to be the amount of damages at the time of the conversion, because that conversion was the immediate cause of the actual loss or damage.

8. The hirer of a slave cannot be held liable for a loss or injury to the slave resulting from the recklessness or perverse will of the slave; for, in no case, is a master liable for the acts of

his slave, unless such acts are by the permission or command of the master.

W. M. MURPHY, *contra:*

1. The court will observe that there is in the declaration a count in trover.

2. The hiring of this slave by Seay to Nance, in whose possession he was drowned, was a conversion of the property. The hiring is a personal trust, and not assignable; this is true as well with apprentices as slaves.—Tucker & Wife v. Magee, 18 Ala. 100.

3. In the last case cited, this court decide the law in relation to apprentices and slaves so far as to the personal trust to be the same. An apprentice is not assignable,—8 Mass. R. 299; 19 Pick. 556. The result is, that the refusal of the judge to charge that Seay was not liable unless Nance was guilty of gross negligence, is correct, as the hiring was of itself unlawful (to Nance) and was a conversion, as the slave was not assignable.

4. If Seay had a right to hire him to Nance, he had a right to hire him before the mast in the East India trade, and then throw the *onus* on Marks to prove gross negligence on the voyage.

5. As to the demurrer to the declaration that suit was prematurely brought, see Hooks v. Smith *et al.*, 18 Ala. 338.

6. As to right of defendant in error to introduce parol proof, see Brown v. Isbell, 11 Ala. 1021; West & West v. Kelly's Ex'r, 19 Ala. 353.

7. As to the declarations of the agent, Compton, see Williams v. Shackelford, 16 Ala. 318.

CHILTON, C. J.—We are of opinion that the Circuit Court erred in the admission of parol evidence to show that the slave, King, was hired to be employed in the business of livery stable keeping. The contract of hiring was reduced to writing: it was general in its terms, and authorized the bailee to employ the slave in any business to which slaves were ordinarily put, and which was not attended with extraordinary risk or peril to his life or health. This is the legal effect of the contract into which the parties entered, and which was reduced to writing. This

contract, as was decided in Nave v. Berry et al., 22 Ala. Rep. 382, must be read as though the above provision was inserted in it; and to admit parol proof, showing that the slave was employed for a specific purpose, would be to give to the contract quite a different effect from that which the law attaches to it, and violates the familiar rule which forbids that a written instrument, which the parties have agreed upon as the exponent of their contract, should be varied, either as to its terms or legal effect, by parol evidence.

The case just cited seems to be conclusive of this against the admission of parol evidence. No difference in principle exists between them.

If the parties designed to give to the contract a more restricted operation, and to limit the employment of the slave in a particular business, they should have specified that in the writing, in which they have inserted other provisions as to what shall be done for him by the hirer. Not having done so, the hirer, we repeat, has purchased the right to employ him in any business to which slaves are usually put by prudent owners, not involving extraordinary hazard to the life or health of the slave. Such is the scope of the written contract in this case.

It is supposed by the counsel for the defendant in error, that the re-hiring by Seay to Nance, irrespective of the nature of the employment, amounted to a conversion; but we do not so regard it. The hirer, being the owner for the term, may re-hire the slave to another, being responsible to the owner for his proper treatment, and for his not being employed otherwise than is authorized by the scope of his agreement with the owner. If the agreement be general, as in this case, by which the hirer becomes entitled to employ the slave in any common or ordinary service, and he engages him in a business attended with extraordinary peril, such as could not be presumed to be in the contemplation of the parties at the time, or he hire him to another to be engaged in a hazardous business, and he is killed while thus employed even by inevitable accident, the owner may regard such misuse of the slave as a conversion, and recover from the person to whom he hired him the value of such slave.— Mullen v. Easley, 3 Humph. Rep. 428; Hooks v. Smith et al., 18 Ala. Rep. 338.

It is also very clear, that if the slave is thus employed in

a hazardous business not warranted by the contract of hiring, it is wholly immaterial, so far as the right of the owner is concerned, how the injury or destruction of him is brought about, if the owner had no agency in producing it. So that, if in this case, the slave was hired to Nance to raft lumber upon the river, and such employment is attended with extraordinary peril, and is without the general and common business in which slaves are usually engaged, Seay would be responsible for his loss while so employed, although the more immediate cause of his death was the disobedience of the slave.—Duncan v. The Railroad Co., 2 Rich. Rep. 613; Hooks v. Smith, *supra*, and cases there cited.

It is unnecessary to prolong this opinion by an examination of the charges given and those refused. The case must be remanded, for the error in admitting the parol evidence limiting the hiring to the employment of the slave in the livery stable, and the principles of law above laid down, we trust, will be a sufficient guide in its future progress.

Judgment reversed and cause remanded.