# FAIL & MILES *vs.* McARTHUR.

[TROVER FOR CONVERSION OF SLAVES.]

1. *Error without injury in sustaining demurrer to special plea.*—The sustaining of a demurrer to a special plea, even if erroneous, is not a reversible error, when the record shows that the defendant had the benefit of the same matters of defense under the general issue.

2. *Admissibility of declarations as part of res gestœ.*—The declarations of a third person, explanatory of a contemporaneous act, are not admissible evidence

on the principle of *res gestæ*, unless the act which they explain is itself relevant and material.

3. *Admissions of partner admissible evidence against co-partner.*—In trover against a partnership, for the conversion of a hired slave by employing her in a service different from that which was specified in the contract, the admissions of one partner, during the existence of the partnership, as to the terms of the contract of hiring, are competent evidence against his co-partner.

4. *Estoppel against owner of hired slave from maintaining trover for conversion.*—If the owner of two hired slaves, after instituting an action for the conversion of one of them during the term, transfers to a third person the note given for the amount of the hires, and then regains the possession and ownership of it, by executing his own note in its stead, before it falls due or is paid, this does not estop him from recovering for the conversion.

5. *What constitutes conversion of hired slave.*—If a slave is hired for a particular service, and is afterwards employed by the hirer in another and different service, this is a conversion, if the owner elect so to treat it.

APPEAL from the Circuit Court of Wilcox.
Tried before the Hon. JOHN GILL SHORTER.

THIS action was brought by John G. McArthur against the appellants, as partners, to recover damages for the conversion of a hired slave. The suit was commenced on the 14th *February*, (?) 1854; but the complaint, which is styled by the clerk "amended complaint," alleges the conversion to have taken place on the 30th February, 1854, and is marked "filed 6th March, 1854." The defendants pleaded, 1st, the general issue; and, 2d, that they hired the said slave from the plaintiff, on or about the 1st January, 1854, for the whole of the year 1854, and that the term of hiring had not expired at the commencement of the suit. The court sustained a demurrer to the second plea, and issue was joined on the first.

On the trial, as the bill of exceptions states, "the plaintiff introduced evidence tending to show that, on the last of December, 1853, the defendants were engaged, as co-partners, in making brick in Wilcox county; that he hired to them, for the year 1854, two slaves, one of whom was the negro woman for whose conversion this suit is brought; that said negro woman was removed from the defendants' brick-yard, some time after the middle of January, 1854, to the plantation of the defendant Fail; that she was there put to picking cotton on the low grounds, where

there was more or less mud and water; and that, on the third day after she commenced work on the plantation, she was taken sick, and, after a few days illness, died. With a view of showing misconduct and neglect of duty on the part of plaintiff, the defendants attempted to show that said negro woman, within one month before said hiring, and while in plaintiff's possession, had given birth to a child, which had died. This evidence was admitted without objection on the part of plaintiff; and, in rebuttal on this point, the plaintiff introduced a witness who lived about a quarter of a mile from his house, and who testified, that about the last of November, 1853, his wife left home, to go to plaintiff's house, and, as she started off in that direction, told him that she had been sent for to see a negro woman there who was about to have a child; and that his wife told him, when she came home, that the negro woman had been delivered of a child. To each portion of this evidence the defendants objected; the court overruled their objections, and they excepted.

"It was in proof, that at and before the commencement of this suit, and while the defendants were co-partners, the defendant Miles said, that said negro woman was hired by them to work in their brick-yard. On this point, the defendants' counsel asked the court to instruct the jury, that the admissions of Miles were not evidence against his co-defendant, as this was an action of tort. The court refused to give this charge, but instructed the jury, that what Miles may have said, while he and Fail were partners, in reference to the contract of hiring, was evidence against both as to the terms of the contract, but was not evidence against Fail as to the conversion; and to the refusal to give the charge as asked the defendants excepted.

"It was in proof, also, that the defendants gave plaintiff a note for the amount of the hires of said two slaves, due the 1st January, 1855; and that plaintiff, after the commencement of this suit, sold said note to one Miller, but afterwards, before it fell due, and before any part thereof had been paid, got it back into his possession and ownership, by giving said Miller his own note in exchange.

On this point, defendants' counsel asked the court to instruct the jury, that if plaintiff, after the commencement of this suit, had sold said note, and got it back under the circumstances stated, this was an assertion of the original contract, and he could not recover for the conversion of the negro ; which charge the court refused to give, and the defendants excepted.

"The defendants asked the court to charge the jury, also, that to constitute a special hiring of a slave, it was necessary that the parties should agree, that the slave should work at a particular place or business, and should engage in no other employment.    This charge the court gave, but with this qualification : that it was not necessary to show that these express words, to-wit, 'that the slave should engage in no other employment,' were used by the parties in making the contract ; and that they might determine from the evidence, whether such was the understanding and agreement of the parties at the time of the hiring, and was embraced in their contract ; to which qualification of the charge asked the defendants excepted.

"The court further charged the jury, 'that if there was a mutual understanding and agreement between the parties that the negro was to work at the brick-yard, and the defendants removed her from the brick yard, and put her to work on a plantation, such disposal of her would violate their contract.'   The jury afterwards returned to ask an explanation of this charge, and inquired of the court, 'whether the defendants should have hired the slave to work at one business exclusively, in order to constitute a special hiring.'   In reply to this question, and in further instructions as to the law, the court said, that if a man hired a horse from a livery-stable, to go to Allenton, he had no right under this contract to go to another and a different place, and that such a contract would be a special contract ; and closed by saying, 'that if the defendants hired the negro from the plaintiff to work at the brick-yard, and this was their agreement with him, such contract was a special hiring ;' and to this charge, also, the defendants excepted."

The sustaining of the demurrer to the second plea, and the several rulings of the court to which exceptions were reserved, are now assigned as error.

D. W. BAINE, for the appellants.

WATTS, JUDGE & JACKSON, *contra.*

WALKER, J.—It is clear from the record, that the defendant had the advantage of the defensive matter of the second plea, under the general issue. Therefore, an error in sustaining the demurrer to the second plea, if one was committed, will not authorize a reversal of the judgment of the court below.—Dunlap v. Robinson, 28 Ala. 100 ; Nelson v. Bondurant, 26 Ala. 341; Goodwin v. McCoy, 13 Ala. 271; Shehan v. Hampton, 8 Ala. 946; Rakes v. Pope, 7 Ala. 166.

2. In order that the declarations of a third person may be evidence, as a part of the *res gestæ,* it is necessary that the act which they explain and qualify should itself be pertinent to the issue.—Gilbert v. Gilbert, 22 Ala. 529 ; Hooper v. Edwards, 20 Ala. 528 ; Robertson v. Smith, 18 Ala. 220. The wife of one of the witnesses declared, when in the act of going to the plaintiff's house, that she was going to see a negro woman, about to be delivered of a child ; and when she returned, she declared that the woman had given birth to a child. It is a fatal objection to the competency of those declarations, that the acts of going to and of returning from the plaintiff's house, which they are supposed to qualify and explain, are totally immaterial and irrelevant. The declarations of third persons cannot become evidence, because they accompany acts of third persons which have no connection with the case. For the error in the admission as evidence of these declarations, the judgment of the court below must be reversed, and the cause remanded.

3. If the defendants, as partners, hired the slave of the plaintiff, for the service of the partnership, in a particular department of labor, and then employed her in one different from that stipulated by the contract, the conversion which results would impose a liability upon the

defendants as partners. The tortious conversion consists in the violation of a partnership contract, by the employment of the slave in a manner inconsistent with it; it is a legal inference, at the election of the plaintiff, from the particular violation of the contract. Under the decision in Myers v. Gilbert, 18 Ala. 467, a different rule of liability applies to tort-feasors, as between themselves, who commit such an act as that which makes the conversion here, from that which ordinarily prevails. The duty of contribution to the payment of the damages resulting from the tort appertains to both as partners.—Story on Partnership, 322, § 220. For this reason, the rule which makes the declarations of one partner, pending the partnership, evidence against all the partners, applies to this case.

4. There was no error in the refusal of the court to charge the jury, that the plaintiff could not recover, if, after the commencement of this suit, he had sold the note given for the hire of the slave during the term of the bailment, and had re-obtained the possession and ownership of the note, by giving his own note in lieu of it to the assignee. The court was bound to refuse this charge, unless the transfer of the note for the hire estopped the plaintiff, notwithstanding he had regained the possession and ownership of the note. In Moseley v. Wilkinson, 24 Ala. 411, it was held, that the bailor of a slave for hire is estopped from a recovery for the conversion of the slave during the period of the bailment, by receiving before suit brought payment of the hire for the entire term, if he had full knowledge of the conversion. In that case, the bailor, by an unequivocal act, treated the hirer as retaining that character, and responsible under the contract of hiring to the end of the term. This act consisting in the receipt of money by the owner from the hirer, it would have been prejudicial to the other party for the owner to have asserted an inconsistent right. The owner made his election to treat the bailment as continuing to the end of the term; both parties acted upon that election; and, upon principles of justice, as well as settled law, he was estopped from asserting the contrary in a suit for the

conversion of the slave. Here, the plaintiff, after suit . brought, transferred the note, and then took it back. This was not an act treating the bailment as continuing to the end of the term, of such unequivocal import as will authorize an application of the doctrine of estoppel. The note included the hire of another slave. The plaintiff may have transferred the note with the intention of regaining it. The defendants did no act, referring to, or based upon, the treatment of the hiring as continuing to the end of the term.—Hooks v. Smith, 18 Ala. 338.

5. The court charged the jury, that a special hiring, for a particular employment, could be shown without the use of the express words, "that the slave should engage in no other employment;" and "that they might determine from the evidence, whether such was the understanding and agreement of the parties at the time of the hiring, and was embraced in their contract." This charge was correct. If a slave should be hired to one for a particular purpose, to be employed at a particular labor, there would be a special hiring for a particular purpose. He who hires a slave for a particular service has no right to employ the slave in another and different service; and if he does so, it may be treated as a conversion by the owner.—Hooks v. Smith, 18 Ala. 338; S. C., 19 Ala. 101; Moseley v. Wilkinson, 4 Ala. 411. This principle is not only settled in this State, but was well established at common law; and the books abound with adjudications recognizing it. Where one hired a horse, to ride from Boston 4½ miles to Brooklin, and, upon reaching Brooklin, rode 4½ miles farther to Watertown, he was held liable for a conversion of the horse.—Wheelock v. Wheelwright, 5 Mass. 104; Rotch v. Hawes, 12 Pick. 136. So, "if a horse is hired as a saddle-horse, the hirer has no right to use him in a cart, or to carry loads, or as a beast of burden; and one who borrows jewels, to wear to a ball, will be responsible if he wear them to the theatre, or to a gaming house. Edwards on Bailments, 238; see, also, Story on Bailments, §§ 232, 233, 234, 241.

Tested by the principles above laid down, the additional

instructions of the court, given on the request of the jury, were, in all respects, free from error.

The judgment of the court below is reversed, and the cause remanded.