# Cartlidge *v.* Sloan.

*Action for Damages for Conversion and Injury to Animal by Bailee.*

1. *Appeal; how dismissed by appellant.*—After appeal taken to the Supreme Court and supersedeas bond given, the appellant cannot dismiss the appeal except by order of the appellate court.

2. *Demurrers; when judgment on not sufficient.*—When a complaint contains several counts and each count is demurred to, a judgment entry with respect thereto in these words, "The defendant's demurrers to the complaint is overruled by the court," is not sufficient and will not support an assignment of error thereon.

3. *Negligence; what will not support action for.*—Where one hires an animal of another for a specified use and puts it to other and different use, such breach of the terms of the bailment will not warrant a recovery for negligence. To support an action for negligence in such case the evidence must disclose

[Cartlidge v. Sloan ]

an inadvertent failure on the part of the hirer to use ordinary care under the circumstances in observing or performing a non-contractual duty, implied by law, which failure is the proximate cause of injury to a person to whom the duty is due.

4. *When count bad for repugnancy.*—When a count in a complaint brought to recover damages for negligent injury to an animal, alleges that the defendant recklessly, carelessly and wantonly so used the animal that she died, it is bad for repugnancy and really avers, in the alternative, either negligence or wantonness, since an act cannot be done through inadvertence and at the same time be done wantonly;. and construing the count against the pleader, it must be held to charge negligence only.

5. *When count states no cause of action.*—A count which charges negligence against a defendant but alleges no duty owing the plaintiff by the defendant, nor states any facts from which the law will imply the duty, states no cause of action.

6. *Conversion; what is by bailee.*—Where a person hires an animal for a specified kind of work, and in violation of the terms of the bailment the bailee uses it for other and different labor, such unauthorized use is a conversion of the animal for which the bailor may maintain trover for its value. And in such case the liability for injury or loss is not dependent upon the want of care on the part of the defendant in the use of the animal, but it is absolute. Nor is the injury or loss an element in the conversion; it can only go to the measure of damages.

7. *Plaintiff must prove conversion.*—Where it is charged that a bailee was guilty of conversion by misuse of the property bailed to him and injury thereto, the mere fact that it was uninjured when delivered to the defendant and was injured when returned by him, does not make out a *prima facie* case. The plaintiff must prove a conversion by proving to the reasonable satisfaction of the jury that the defendant made use of the property in a way in violation of the terms of the bailment.

APPEAL from Cherokee Circuit Court.

Tried before Hon. S. H. SPROTT.

Suit by J. B. Sloan against N. M. Cartlidge to recover damages for injury to a mare, the property of the plaintiff. The complaint contained five counts, the nature of which and the facts of the case are set out in the opinion. The following are the charges referred to in the opinion. Given to plaintiff: 1. "If the jury believe from the evi

[Cartlidge v Sloan.]

dence that Cartlidge got the mare to do a particular kind of work, and put her to a different kind of work, and she was injured while doing such work, this was a conversion and would make the defendant liable." 2. "If the jury believe from the evidence that Cartlidge only plowed Sloan's patch for his benefit to get the mare sooner to use at his own work, this of itself was not sufficient to constitute a hiring." 3. "If the defendant borrowed or hired -the mare to do light work, and put her to heavy work, and while she was doing such heavy work she received an injury from which she died, then the defendant is liable although the injury to the mare occurred without any fault on the part of the defendant." 4. "The plaintiff makes out a *prima facie* case by proving to a reasonable certainty that the mare was not injured when Cartlidge got her, and that she was injured when he returned her." Refused to the defendant: 1. "That the relation of the plaintiff and the defendant at the time this horse was injured was that of hiring." 2. "The court charges the jury that if they believe from the evidence the mare died from improper treatment by Sloan or by his doctoring after she was injured, the jury must find for the defendant." 3. "The court charges the jury that if they believe from the evidence that the horse died from erysipelas or blood poison and not from the injury received the defendant is not responsible for the value of the mare." 4. "That the plaintiff is not entitled to recover on the last count in his complaint."

H. W. CARDON, for appellant.

BURNETT & CULLI, *contra,* cited, *Higman v. Camody,* 112 Ala. 509; *Wheelock v. Wheelwright,* 5 Mass. 104; *Bridges v. T. C. & I. R. R. Co.,* 109 Ala. 287; *Haas v. Taylor,* 80 Ala. 459; *Bennett v. O'Brien,* 37 Ill. 250; *L. & N. R. R. Co. v. Barker,* 96 Ala. 435.

TYSON, J.—It appears that the endorsement made by appellant upon the *supersedeas* bond, was made by him upon the advice of counsel that such an endorsement would exonerate his sureties upon the bond from all lia-

bility; and upon being informed that it would not have this effect, he withdrew or revoked the order to the clerk contained in the endorsement made by him upon the bond and directed the clerk to make a transcipt of the proceedings in the cause and forward it to this court. He had the right to withdraw his offer to dismiss his appeal at any time before it was acted upon by this court. A dismissal could not have been effectuated except by an order made here. True, he had the right to direct the clerk not to make a transcript of the proceedings, and had he not withdrawn this instruction to this effect the appellee could have had a judgment of affirmance not only against the appellant but his sureties also, upon production by him of the proper certificate of the clerk that an appeal had been taken.—1 Brick. Dig. 103. The motion to dismiss the appeal must be denied.

It appears that each count of the complaint was demurred to. However, the only recital in the judgment entry with respect thereto is in these words: "The defendant's demurrers to the complaint is overruled by the court." This is not sufficient as a judgment of the court upon the demurrers and will not support an assignment of error. We must, therefore, decline to consider them.—*McDonald v. Ala. Midland R'y Co.,* 26 So. Rep. 165, and authorities there cited.

The *gravamen* of the first, second and third counts of the complaint is conversion of the mare, by the using of her in a way, in violation of the terms of the agreement under which the defendant acquired possession of her. The fourth count in averring the bailment simply avers that "plaintiff *let* defendant have the use etc." The word *let* as here used, taking into consideration the entire context of the count, upon the familiar principle, that pleadings must be construed most strongly against the pleader, must be construed to mean "to lease; to grant the use and possession of a thing for compensation."—Bouvier's Law Dict. p. 185. So then this count is predicated upon a hiring of the mare by the plaintiff to the defendant for a reward, the negligent use by the defendant of her in permitting her to be worked by a boy when injured and the negligent use of her after the injury from which she died. The fifth count alleges that

[Cartlidge v. Sloan.]

the "defendant recklessly, carelessly and wantonly so used" the mare that she died. This count is "bad for repugnancy and really avers, in the alternative, either negligence or wantonness, since an act cannot be done through inadvertence and at the same time be done wantonly; and construing the count against the pleader, it must be held to charge negligence only."—*L. & N. R. R. Co. v. Orr*, 26 So. Rep. 35, s. c. 121 Ala. 489, and authorities there cited. Thus construing it, it does not state a cause of action for the obvious reason, that it alleges no duty owing the plaintiff by the defendant nor states any facts from which the law will imply the duty.—*Ensley R. Co. v. Chewning*, 93 Ala. 24; 14 Ency. Pl. & Pr. 331. If it were possible, however, under any phase of the case to construe this count as charging wantonness, the plaintiff would derive no benefit arising out of such a construction, for the reason, that such an allegation is wholly unsupported by the evidence in the case.

We will consider in the inverse order of the pleadings, that phase of the case relying upon the negligence of the defendant resulting in injury to the mare for a recovery. A bailment was created when there was a delivery of the mare by the plaintiff to the defendant for a particular use or purpose.—*Magee v. Toland*, 8 Port. 36; 3 Am. & Eng. Ency. Law (2nd ed.) 733. The testimony of all the witnesses agree that at the time of the delivery of the mare, it was understood that she was to be used by the defendant for farm work. The contention of the plaintiff, and there is testimony tending to support it, is that no consideration was to be paid by the defendant for her use and that she was only to perform light work, to-wit: "to open corn beds." The contention of the defendant, and there is testimony tending to support his side of the controversy, is that he was to and did pay the plaintiff a consideration for the use of the mare and that she was to perform farm work generally, without reference to whether it was light or heavy.

The evidence establishes, without dispute, that at the time the animal was injured, she was being worked by the defendant with two of his mules to a harrow in the preparation of land, which the year previous had been

[Cartlidge v Sloan.]

cultivated in corn. That the position of the mare was on the right side of one of the mules, immediately in front of the harrow, which mule was being ridden by one of his sons, and the other mule was working single in front. The mare and mules thus arranged were what is commonly known as a "spike team." In working the team in this manner the front mule walked upon the old corn bed, while the mare and the saddle mule walked in the water furrow upon each side of the bed or row.

The defendant, at the time of the injury to the mare, was riding upon the harrow and was superintending the work. It was while this work was being done, that the mare was injured by means of the end of a corn stalk, which was standing, stabbing her in the breast which inflicted the injury.

It appears without dispute that the team was being driven in a careful manner at the time the injury was inflicted and the work was not at all dangerous or hazardous. When the mare was wounded she stopped and thereupon the defendant removed the corn stalk which inflicted the injur yand immediately unhitched her from the harrow and gave her the proper attention. Within a few hours after the occurrence of her injury, he returned her to the plaintiff and assisted him in caring for her wound.

It is very clear from this statement of the facts, that the averments of the fourth count of the complaint are not sustained. Indeed, it can be said as a matter of law, upon these facts that the defendant was not guilty of any negligence whatever. He may have been guilty of a breach of the terms of the bailment, depending upon the finding by the jury as to the truth of the plaintiff's contention upon that point. Should the jury find that the defendant agreed when he received the mare to use her for light work and violated his agreement by using her to do heavy work, this would not warrant a recovery for negligence. The evidence must disclose his "inadvertent failure to use ordinary care under the circumstances in observing or performing a non-contractual duty, implied by law, which failure is the proximate cause of injury to a person to whom the duty is due."—16 Am. & Eng. Ency. Law, 389. In other words, the evidence must dis-

close the failure of the plaintiff to use ordinary care in the use of the mare while working her to the harrow, which failure was the proximate cause of her injury.

The other phase of the case, to which we will now advert, involves the right of the plaintiff to recover, based upon an alleged use of the mare in violation of the terms of the bailment. The general rule is that if a bailee having authority to use a chattel in a particular way uses it in a different way or to a greater extent than authorized, such unauthorized use is a conversion of the chattel for which the bailor may maintain a trover for its value. An illustration, *apropos* to this case is found in the case of *Fail & Miles v. Mc-Arthur*, 31 Ala. 26, where it is said: "If a slave should be hired to one for a particular purpose, to be employed at a particular labor, there would be a special hiring for a particular purpose. He who hires a slave for a particular service has no right to employ the slave in another and different service; and if he does so, it may be treated as a conversion by the owner. This principle is not only settled in this State, but was established at common law, and the books abound with adjudications recognizing it. Where one hired a horse, to ride from Boston 4½ miles to Brooklin and upon reaching Brooklin, rode 4½ miles farther to Watertown, he was held liable for a conversion. So, if a horse is hired as a saddle horse, the hirer has no right to use him in a cart or to carry loads, or as a beast of burden; and one who borrows jewels, to wear to a ball, will be responsible if he wear them to the theatre or to a gaming house." See also *Fox v. Young*, 22 Mo. App. 386; *Lane v. Cameron*, 38 Wis. 603; *De Tallcman v. Fuller*, 12 Am. Dec. 616 and note on pp. 619-620; *Bolling v. Kirby*, 90 Ala. 215, s. c. 24 Am. St. Rep. 789, notes 795 to 819. In such case, the liability for injury or loss is not dependent upon the want of care on the part of the defendant in the use of the mare, but it is absolute.—*Hooks v. Smith*, 18 Ala. 338; *Duncan v. Railroad Co.*, 2 Rich. (S. C.) 613. Nor will the subsequent return of the property after its misuse and its acceptance by the bailor bar an action for the conversion, but its redelivery will only go in mitigation

of damages.—*St. John v. O'Connell,* 7 Port. 466.   If the chattel is so injured as that it is worthless when returned, the damages of course would not be reduced. The burden of proof where a conversion for a misuse is relied upon for a recovery, is upon the plaintiff, just as it is in any other action for a conversion.

The mere proof by the plaintiff that the mare was uninjured when delivered to the defendant and was injured when returned by him did not make out a *prima facie* case. It was incumbent upon him to prove to the reasonable satisfaction of the jury that the defendant made use of her in a way in violation of the terms of the bailment. He must prove a conversion.

It follows from what we have said that charges numbered 1, 3 and 5 requested by the plaintiff were properly given and that the giving of charge number 4 at the request of plaintiff and the refusal to give charge number 4 at the request of the defendant was error.

Charge number 2 given at the instance of the plaintiff was misleading and abstract, and should have been refused. But the giving of it is not a reversible error.

Charge number 1 requested by defendant was properly refused.

Charge 2 is predicated upon the proposition that if the plaintiff by improper treatment of the wound which the mare received caused her death, then the plaintiff ought not to recover. The plaintiff's right of action for a conversion was complete when the conversion took place and this without reference to the mare's physical condition after the conversion. If she was returned to him after injury, the then condition of the mare was an element to be considered by the jury in fixing the amount of damages the defendant should pay. If by the injury she was rendered worthless, then, of course, the market value of the mare was the measure of damages. If the injury caused her death, this would afford evidence of her worthless condition when returned; but whether the injury caused her death, or whether her death was caused by some intervening superseding cause, is only material in determining the amount of damages the plaintiff should recover. Should a superseding intervening cause be shown, causing her death, this would not

[Burke Adm'r v. Alabama Midland Railway Company.]

defeat the plaintiff's right to recover, at least, nominal damages. For these reasons this charge should have been refused.—*Collins v. Bennet*, 46 N. Y. 490.

Charge 3 requested by defendant was rightly refused. The erysipelas or blood poisoning may have been the result of the injury or a mere development of the injury—in which case the defendant would be liable, if guilty of a conversion.—*Armstrong v. Montgomery St. R'y Co.*, in MS.

For the errors pointed out the judgment of the circuit court must be reversed and the cause remanded.

Reversed and remanded.