## CRUTCHER vs. MEMPHIS & CHARLESTON RAILROAD COMPANY.

[TROVER FOR CONVERSION OF SLAVE.]

1. *Contract of agent, in his own name, not* prima facie *binding on principal.* A writing in these words: "Hired of R. C. the following negroes, to-wit." &c., "to work on the M. & C. railroad, from now until the 25th December next; for which I agree to pay said C. twenty-five dollars per month each, and I also agree to feed, and pay all medical expenses, if any; and the said C. loses all runaway time, if any. Given under my hand and seal"; and signed, "W. H. E., agent for M. & C. R. R. Co., per W. M. N.,"—is, *prima facie,* the contract of the agent, and not binding on the principal personally.

2. *Offer of deposition containing both legal and illegal evidence.*—When an entire deposition is offered in evidence, the court is not bound to separate the legal from the illegal evidence which it contains, but may exclude it altogether.

3. *General charge on evidence ; presumption of injury from error* —Where there is an entire failure on the part of the plaintiff to prove a fact necessary to his recovery, the court may instruct the jury, without hypothesis, to find a verdict for the defendant; but, if the court, having instructed them hypothetically—"if they believe the evidence"— to find for the defendant, afterwards repeats this charge to them, "accompanying it with the intimation, that their further deliberations must result in a verdict for the defendant, else they would subject themselves to the consequences of a contempt of court,"—this is an error, from which injury will be presumed, and which will work a reversal, unless the bill of exceptions affirmatively shows that the court might properly have directed the jury, in the first instance, to find a verdict for the defendant, without referring to them the credibility of the testimony.

APPEAL from the Circuit Court of Madison.
Tried before the Hon. S. D. HALE.

THIS action was brought by Reuben Crutcher, against the Memphis & Charleston Railroad Company, to recover damages for the loss of a slave, who was accidentally killed while working on the defendant's road; and was commenced on the 23d July, 1857. The complaint, as amended, contained a count in trover, and also a special count, which averred that the slave, while in the defendant's possession under a contract of hiring, was employed in work which was extraordinarily dangerous and hazardous, contrary to the stipulations of the contract, and, while so employed, was negligently killed. On the trial, as the bill of exceptions shows, the plaintiff proved the circumstances attending the slave's death, and his value ; and then introduced one Studdart as a witness, who testified as follows :

" Witness was authorized by F. C. Arms, the defendant's general superintendent and chief engineer, to hire hands for the defendant's road. Defendant was anxious that the road should be speedily completed, and offered extraordinary inducements to its agents to hire hands. Witness' contract of agency authorized him to hire hands for the use of the road at any price less than thirty dollars per month, the road being responsible to the master for such sum as he agreed to pay ; and in addition, as compensation for his

services in hiring hands, the defendant allowed him the difference between the prices so agreed on and thirty dollars per month. Witness originally had the contract on section No. 42 of the defendant's road; but, before completing that, defendant was anxious for him to contract also for section No. 39; and witness finally agreed to do so, with one D. H. Stevens, under the firm of Studdart & Stevens. At the time of his said contract for section No. 39, witness was agent to hire hands for defendant, under the power before mentioned; and he agreed with one W. M. Newby, that if he (Newby) would furnish seven or eight hands on said contract, in addition to their hire he should be allowed fifty dollars per month for his personal attention under said contract. Said Newby did furnish seven or eight hands, and among them were the two negroes belonging to the plaintiff. After the completion of his contracts, and after the death of the negro John, witness remained on the road until the 25th December, 1856, when he had a settlement with the defendant. In that settlement, witness charged the company with the hire of all the hands who had been working on his contracts, whom he transferred to the general use of the road, at the rate of thirty dollars per month; and his account was allowed. Among the hands so transferred was Clem, the plaintiff's remaining slave; and witness received from defendant, for the remainder of the year, thirty dollars per month for said hands." The witness further testified as to the manner in which blasting was done on the road, and the hazard and danger attending it.

The plaintiff then read in evidence the deposition of F. C. Arms, who testified, that he was the defendant's chief engineer and general superintendent, from March 1, 1856, to July 1, 1858, and had the same powers and duties which usually appertain to those officers, under the direction of the president and board of directors; "that he had general authority to employ sub-agents, contractors, negroes, &c., but a general rule of the company required all important contracts to be in writing, and signed by the president;" "that he gave W. H. Easley written authority to employ

negroes to work on the defendant's road, and was author-
ized to do so by virtue of his office, but has no written evi-
dence of his authority;" "that the negroes employed by
said Easley, among which were the plaintiff's negroes,
were put to work on a private contract near Corinth, and
the company was not notified of the hiring until after the
death of one of said negroes;" and "that plaintiff's said
negro was not received into the employment of the com-
pany, they having no notice that the negro was hired for
them."

The plaintiff then read in evidence the written authority
given by said Arms to Easley, which was dated August
15, 1856, signed "F. C. Arms, eng. and general superin-
tendent," and stated that "the bearer, W. H. Easley, is
authorized to employ negroes to work on the Memphis &
Charleston railroad, and any contract made by him for this
purpose will be duly ratified by the said company;" and
he then offered to read to the jury a writing of which the
following is a copy :

"Huntsville, Ala., Sept. 6, 1856. Hired of R. Crutcher
the following negroes, to-wit, John and Clem, to work on
the M. & C. railroad from now until the 25th December
next ; for which I agree to pay said Crutcher twenty-five
dollars per month each, and I also agree to feed, and pay
all medical expenses, if any ; and the said Crutcher loses
all runaway time, if any.   Given under my hand and seal.
                              "W. H. EASLEY, agent
               for M. & C. R. R. Co., per W. M. Newby."

The defendant objected to the reading of this paper as
evidence, and the court sustained the objection ; to which
the plaintiff excepted.   The plaintiff then offered in evi-
dence the deposition of said Newby, who made the con-
tract for the hiring of plaintiff's negroes, and who appended
to his deposition, as an exhibit, the written authority from
said Easley under which he acted.   The court excluded the
deposition and exhibit, on the defendant's motion, and the
plaintiff excepted.

"The plaintiff asked the court to instruct the jury, that

if they believed the negro John was placed by defendant's agent or superintendent, in discharge of the work, during which—(?) then they must find a verdict for the plaintiff, for the value of the negro, with interest. The court refused this charge, and the plaintiff excepted to its refusal. The court charged the jury, at the request of the defendant, that if they believed the evidence they must find a verdict for the defendant ; to which charge the plaintiff excepted. The court gave no other charge to the jury, and they retired to consider of their verdict. After the lapse of a short time, the jury returned for further instructions from the court, which the court gave. The jury retired to consider further of their verdict ; but, before they returned, the court instructed the sheriff to bring them into the court-room, and the sheriff did so ; and the court thereupon repeated to them the charge which it had first given, accompanying it with the intimation, that their further deliberations must result in a verdict for the defendant, else they would subject themselves to the consequences of a contempt of court. To the order of the court to the sheriff to bring the jury into court, to the charge of the court, and to the accompanying remarks, the plaintiff excepted."

The several rulings of the court to which, as above stated, exceptions were reserved, are now assigned as error.

GOLDTHWAITE, RICE & SEMPLE, for appellant.
WALKER & BRICKELL, *contra.*

A. J. WALKER, C. J. [1.]—The contract of hiring in this case was not, *prima facie,* the contract of the defendant, but of him by whom it was executed. The word "agent," following the signature to the contract, does not constitute it the contract of an agent for his principal.—*Drake v. Flewellen,* 33 Ala. 106. The contract was, therefore, *prima facie,* inadmissible ; and, in the absence of the introduction or offer of explanatory evidence, was properly excluded.

[2.] There was no error in rejecting the offer in evidence of the deposition of Newby, with its exhibit ; for at

least a portion of it was illegal, and the court was authorized to exclude the legal and illegal evidence offered together.—*Hiscox v. Hendree*, 27 Ala. 216; *Jeans v. Lawler*, 33 Ala. 340.

[3.] The bill of exceptions does not purport to set out all the evidence. We therefore do not know that all the evidence in the case is before us, and cannot affirm that the court erred in its charge upon the effect of the evidence if believed. If we knew that the bill of exceptions contained all the evidence, we should decide that the charge was correct; for, upon that evidence, the defendant is not chargeable on account of the death of the slave. The mere fact that the slave was employed in the construction of the defendant's road, could not render it liable. The court, therefore, committed no error in refusing the charge asked.

The bill of exceptions informs us, that after the retirement of the jury, they were re-called by order of the court; and that thereupon the court "repeated the charge to the jury it had first given, accompanying the charge with the intimation, that their further deliberations must result in a verdict for the defendant, else they would subject themselves to the consequences of a contempt of court." The charge which the court first gave was, that if the jury believed the evidence, they must find for the defendant. This was, therefore, the charge which was repeated to the jury, in connection with the menace of punishment, unless a verdict was found for the defendant. The court instructs the jury that, if they believe the evidence, they must find for the defendant, and accompanies the instruction with an intimation, that they will incur the penalties of contempt, if *their deliberations* did not result in a verdict for the defendant. The credibility of the testimony is referred to the jury for their determination, and they were caused to retire for further deliberation. If there was a question for the jury to determine, their deliberations should have been left free and uncontrolled. That there was such a question, is clearly implied from the charge given; and in assuming to control the decision of that question, the court erred. The

charge is upon its face erroneous, in that it refers a question to the jury, and then assumes to control its decision.

It may be, that the plaintiff sustained no injury from this error ; and we would probably so hold, if we knew that the bill of exceptions contained all the evidence. The bill of exceptions discloses no evidence whatever, showing, or tending to show, a responsibility of the defendant on account of the slave's death. So far as it is concerned, there is entire absence of any evidence of the defendant's liability. Therefore, if the whole testimony is set out in the bill of exceptions, there was a want of any evidence upon which to charge the defendant, and the court was authorized to direct the jury to bring in a verdict for the defendant. Such a direction is proper, where there is a plain and indisputable failure of the plaintiff to make out his case in some essential particular.—*Gillespie v. Battle*, 15 Ala. 276–285 ; *Knox v. Fair*, 17 Ala. 503 ; *Swift v. Fitzhugh*, 9 Porter, 39 ; *Madden v. Blythe*, 7 Porter, 258 ; *Henderson v. Mabry*, 13 Ala. 713 ; *Rhodes v. Otis*, 33 Ala. 578 ; *Rigby v. Norwood*, 34 Ala. 129 ; Shepherd's Digest, 459. In doing so, the court does not pass upon the credibility of testimony, nor upon any conflict of evidence. It does not even announce the existence of evidence. It simply declares the want of evidence, and the effect of its absence.

We conjecture that, in reality, the bill of exceptions does contain all the evidence in this case, and that the instruction of the court was really given in a case where it was permissible to direct the jury to return a particular verdict ; and we suppose, that the question of the credibility of the testimony was referred to the jury, in a phrase of such frequent occurrence as to become almost habitual with circuit judges ; and that, in the hurry of the trial, the inconsistency of a reference of such a question with the assumption of a right to direct the verdict, escaped attention. We are, however, bound to render our judgment upon the case as the record makes it ; and upon the record it is our plain duty to reverse the judgment of the circuit court.

An error was committed ; we do not know, from the bill of exceptions, that the entire evidence is before us ; we are, therefore, not authorized to say that no injury resulted from the error committed ; and, upon a principle repeatedly announced by us, there must be a reversal.

Reversed and remanded.