# KNOTT *vs.* VENABLE.

[ACTION ON BILL OF EXCHANGE BY PAYEE AGAINST DRAWER.]

1. *Bill of exchange; drawer personally liable*—There being nothing on the face of a draft, nor any evidence in the record to show that it was the intention of the parties, in the *execution of the draft*, not to bind the drawer personally, but the drawee alone ; there is no error in a charge, that in determining whether the drawer (defendant) acted for himself, or as the agent of the drawee, "nothing could be looked to but the draft itself, and that the legal effect of the draft was, that the defendant (the drawer) was personally bound."

2. *Same; payable at sight, entitled to grace.*—A bill of exchange payable at sight, whether foreign or inland, is entitled to days of grace, and must be presented for acceptance within a reasonable time, before payment thereof can be demanded, and what is reasonable time, depends upon the circumstances of each particular case.

3. *Same; protest not necessary to fix liability of parties to an inland bill.* A protest is not necessary by the law merchant to fix the liability of the parties to an inland bill. A demand of acceptance, or payment and notice of refusal, is sufficient; but to recover *damages* on such a bill, it must be protested, and the fact averred in the declaration.

4. *Same ; forwarding notice by general post.*—Where the parties to a bill of exchange reside at a distance, and the ordinary mode of communication is by general post, the holder or party to give notice of its non-acceptance, or non-payment, must forward notice, by the post of the next day, after the dishonor, or after he received notice of such dishonor ; and if there be no post on the next day, then he must send off notice by the very next post that occurs after that day ; but he is not legally bound, on account of there being no post on the day after he receives notice, to forward it on the very day he receives it.

5. *Same ; legal diligence in giving notice of non-acceptance or non-payment.* If such notice be placed in the proper post-office in due time, it is legal diligence, the holder or party to give the notice, not being responsible for the irregularities of the mails.

6. *Same.*—The holder of an inland bill of exchange has a legal right to have it protested, and if the notice of protest has been placed in the post-office, properly directed, on the same day that the notice of dishonor without protest would have been required to be mailed, this is legal diligence in giving notice.

APPEAL from the Circuit Court of Tuskaloosa. Tried before Hon. WM. S. MUDD.

Knott v. Venable.

THIS action was brought by the appellee against the appellant; was commenced on the 18th December, 1865, and was founded on a bill of exchange, of which the following is a copy:

"$17,963 00     TUSKALOOSA, March 18, 1865.

At sight, pay to order of Dr. N. Venable, seventeen thousand nine hundred and sixty-three dollars, on account purchase forty-eight bales cotton.

(Signed,)     R. F. KNOTT.
To Capt. JOHN SCOTT, St. Michael street, Mobile, Ala."

The complaint also contained a count for $17,963 00, for forty-eight bales of cotton sold by the plaintiff to defendant. The bill of exchange was duly protested for non-acceptance, on the 28th day of March, 1865, by a notary public in the city of Mobile, and on the same day, notice of protest was put in the post-office by said notary, at Mobile, directed to the defendant at Tuskaloosa. There was in evidence an account of sales of cotton, with receipt, as follows: "Tuskaloosa, January 30, 1865. R. F. Knott, agent, bought of Dr. N. Venable, administrator of the estate of Wm. M. Marr, deceased, 124 bales cotton, as follows, (setting out the numbers, prices and amount.) Received payment by draft on John Scott, of Mobile. (Signed,) N. Venable, administrator." "It was admitted by both parties," as the bill of exceptions states, "that the draft sued on was given in lieu of another draft (the draft mentioned in said receipt,) which had been given for a part of the cotton mentioned in said account of sales; that the draft first given was carried by Mr. Blair, at the request of plaintiff, as far as Selma, on his way to Mobile, who, hearing at Selma of a proclamation or military order forbidding citizens from going to Mobile, returned with the draft to the plaintiff, and that at the request of the plaintiff, this first draft was taken up by the defendant, and the one sued on, given in lieu of it." The bill of exceptions further states, "there was oral testimony, tending to prove that before and at the time of the sale, the plaintiff was informed that the defendant was purchasing the cotton as the agent of John Scott of Mobile, and was asked by the

defendant if he would receive a draft on said Scott." The first and second charges given by the court were as follows : "That the account of sales, with the receipt attached, and that the oral testimony on the subject of defendant's agency, in the purchase of the cotton for Scott, might be looked to by them, so far as the second count (the common count for cotton sold) of the complaint was concerned, and this proof was, if they believed it, sufficient to prevent a recovery on that count; but that in reference to the first count, (the count on the draft,) to determine whether the defendant acted for himself, or as the agent of Scott, nothing could be looked to but the draft itself, and that the legal effect of the draft was, that the defendant was personally bound." There was another charge given which requires no particular notice. The third, fourth, and fifth charges asked and refused, were as follows : "That if the jury believe from the evidence that the bill was presented by the payee on Monday, and not protested until Tuesday, then reasonable diligence was not used in giving notice of the dishonor of said bill; that if they believe from the evidence, that the bill was presented for acceptance on Monday, by the payee, and then dishonored and acceptance refused, then it was his duty to have the bill protested on that day; and notice given of a protest on Tuesday would not be such diligence as would excuse payee, but that the drawer would be discharged; that if they believe from the evidence that the plaintiff presented the bill to the drawee for acceptance, on Monday the 27th March, at ten o'clock in the forenoon, and that acceptance was then refused, a protest on the next day (Tuesday 28th) will avail him nothing." There were other charges asked. The facts in relation to the presentation of the bill for acceptance will sufficiently appear from the opinion of the court. The defendant appealed to this court, and assigned as error the several rulings of the court below on the charges given, and its refusal to give the charges asked.

MOODY, for appellant.—This suit was brought by the appellee, on a draft drawn *in his favor*, by the appellant, on John Scott, of Mobile, for $17,963, "on account of the pur-

chase of forty bales of cotton." A common count was added.

I. *Agency.*—1. "Before and at the time of the sale, the plaintiff was informed that the defendant was purchasing the cotton as the agent of John Scott, of Mobile ; and was asked by the defendant, if he would receive a draft on said Scott." The account, (which is copied in the bill of exceptions,) begins thus :  "Tuskaloosa, January 30th, 1865. R. F. Knott, *agent*, bought of Dr. N. Venable, administrator," &c.  The receipt attached to it, reads thus :  "Received payment, by draft on John Scott, of Mobile.  N. Venable, administrator."   It was admitted, by both parties, that the draft sued on, was given in lieu of the draft mentioned in said receipt, which had been given for a part of the cotton mentioned in said account ; and that, at the request of the plaintiff, the draft first given was returned to the defendant, and the one sued on, given in lieu of it. "It has been so often decided as to be now a settled rule, that several instruments in writing, made at the same time, between the same parties, and relating to the same subject, constitute but one agreement ; and such a priority in their execution will be presumed as will best effect the intent of the parties."—*Holman et al. v. Crane et al.*, 16 Ala. 577, and cases there cited ; also, *Elliott v. McClelland*, 17 Ala. 206 ; *Dumas v. Smith*, 17 Ala. 305 ; *Strong's Exr's v. Brewer*, 17 Ala. 706 ; *Prater's Adm'r v. Darby*, 24 Ala. 496 ; *Rives v. Toulmin*, 19 Ala. 288 ; *Cuthbert v. Wolfe*, 19 Ala. 373 ; *Trippe v. Trippe*, 29 Ala. 637.  The charge that the account, the receipt and the oral testimony on the subject of defendant's agency in the purchase of the cotton for Scott, might be looked to by them, so far as the common count was concerned ; and that the proof was sufficient to prevent a recovery on that count, was unobjectionable.   But when the court further charged the jury that, "in reference to the first count, (the count on the draft,) to determine whether the defendant acted for himself, or as the agent of Scott, *nothing could be looked to but the draft itself ;* the "settled rule" above quoted, was ignored.

2. The draft itself shows that it was the understanding of the parties, that Knott acted as agent merely ; and that

the object in drawing the draft, was to certify to Scott the amount due to Venable, and what it was for. Why else say, " on account of the purchase of forty-eight bales cotton ?" This is made perfectly clear, when the draft is connected with the " account" and " receipt," and the admissions of the parties. Between the original parties to a bill, Mr. Parsons thus states the law : " If an agent, in the execution of his agency, incurs a debt on behalf of his principal, and draws upon his principal for the amount thereof, in favor of the creditor, it has been held that the agent will not be liable on the bill, if it was the understanding of the parties that he acted as agent merely, and did not intend to make the debt his own. The principal object in drawing the bill in such a case, is to certify to the principal the amount due the creditor ; and the agent may, it seems, *defend on the ground of a want of consideration."* — 1 Parsons on Notes and Bills, 94, and notes and cases cited. Yet the court below, charged the jury that "the legal effect of the draft was, that the defendant was personally bound;" and refused to give the first and second charges asked by the defendant.

II. *Insufficiency of the protest and notice.*

Plaintiff states that he reached Mobile, with the draft, on Saturday afternoon of 25th March, 1865. On Monday morning, about 10 o'clock, he presented the bill to the drawee, at his place of business, for acceptance ; that the drawee *refused* to accept or pay it ; that he immediately handed the bill to a notary ; who, *on the next day,* (Tuesday, 28th,) caused it to be again presented and protested. Scott did not ask for time to consider ; nor was any reason given for not protesting soon after acceptance was refused. The notary's certificate states that the bill was presented and protested on the 28th, and notice to drawer put in the post-office, in Mobile, that day. On the 31st March, three packages of letters were received at Tuskaloosa, from Mobile ; one mailed 26th, one 27th, and one 28th March. The notice of protest was never received. For many years, about and before that time, the mails were closed in Mobile *at noon.* The charges asked and refused had reference, of course, to the facts as proven. A plaintiff must prove due diligence

Knott v. Venable.

in giving notice.—18 Ala. 256 ; 1 Parsons on Notes and Bills, 516.

1. When a bill is protested for non-acceptance, the protest must be made " on the day when the acceptance was refused ; and the neglect to make it, at the time, will only be excused by inevitable accident."—Chitty on Bills, 223, *a,* " on the same day ;" Story on Bills, § 283. Whether the bill be foreign or inland, *the time* for protesting is the same. In this respect, there is no difference, no reason for a difference. The bill was dishonored on Monday morning, 10 o'clock. The protest on the next day, can " avail nothing."

2. By " the most recent authorities, the rule, and we think the correct one, is affirmed to be, that the holder is bound to forward the notice as early as by the mail of the day after dishonor, which does not start at an unreasonably early hour."—1 Parsons on Notes and Bills, 511, 2 ; also, note *l* and *o.* Proof that notice was put into the post-office, at 12 m., on the day after dishonor, without evidence that there was no mail which closed before that hour, was insufficient. If the mail closes at half-past 10 a. m., notice should be sent by it.—Parsons on Bills, 512, note *o* ; *Burgess v. Vreeland,* 4 N. J. 71 ; *Downs v. Planter's Bank,* 1 Smedes & M. 261 ; *Stepherson v. Dickson,* 24 Penn. State, 148. The notice was not in by the closing of the mail at noon, on the 28th. The package of that date was received, the notice was not. These rules and authorities show that the 3d, 4th and 5th charges asked ought to have been given.

III. *As to the value of the cotton.* It would be hard to find authority, I think, for refusing to give the 6th and 7th charges asked ; or for charging the jury, that in ascertaining the value of the cotton, they might look to what cotton was worth " before the war and after the war," and " elsewhere, as well as at Tuskaloosa." The other general terms and phrases put in with these, do not remove the error ; they add to it.

JOHN M. MARTIN, SOMERVILLE & McEACHIN, and WM. R. SMITH, *contra.*—1. The 1st and 2d charges asked by defend-

ant's counsel were properly refused. The principle of law is well established, that parol evidence is not admissible to show that a party signing a bill of exchange, in his own name, in fact signed it as the agent of another.—30 Maine, 299; 7 Miss. 515; 5 Miss. 101; 1 Ala. 436; 8 Sm. & Mar. 473; 2 Selden, 33, 237, and 238; Smith's Leading Cases, 2 vol. 313; Story on Agency, § 270; 8 Meeson & W., 843.

2. So likewise with the 3d, 4th, and 5th charges asked by defendant's counsel; for bills of exchange payable at sight have no definite time at which non-payment at once operates dishonor.—(1 Parsons on Bills and Notes, p. 263;) and the same principle applies in case of non-acceptance. (Ib. p. 350.) The true rule is, that "a *reasonable time* must elapse" before such event dishonors a bill; and "what this time is has not been, and can not be fixed by any precise rule."—(Ib. p. 263.) All that the drawer of a bill can require of the holder is that "the requisite demand be duly made, and due notice be given that the demand is ineffectual."—(Ib. *sup.* 355.) In other words, it is a mere question of "reasonable diligence," which is all the law exacts. 3 Kent's Com. p. 106. The finding of the jury is tantamount to a verdict of "due diligence," and ought not therefore to be disturbed. The presentation of the bill by Venable was only for the purpose of ascertaining whether it would be accepted when *legally presented* by a notary public whose *official duty* "to demand acceptance and payment of bills of exchange" is expressly made such by the Code of Alabama.—(Code, § 857.) In contemplation of the statute, therefore, refusal to accept on the 28th, and not on the 27th, would *alone* operate a dishonor.

3. There can be no question about the propriety of having refused charges No. 6 and 7, asked by defendant; for the principle is well settled in Alabama, that evidence of the value of property at another *time* and *place* than that of sale, is competent to "shed light," in the language of our decisions, upon the value of such property at the latter place.—*Stone & Best v. Watson*, 37 Ala. 280; *Ward v. Reynolds*, 32 Ala. 384. A *fortiori*, would this principle apply under the ordinance of the State convention of the 28th September (p. 55, published ordinances)? This ordinance

allows, among other things, parol evidence to be admitted
" to prove what was the consideration" of the contract, and
" to show what was the real or true value of such consid-
eration," and " what amount the plaintiff is legally, *justly,*
and *equitably* entitled to receive according to the contract,
by the judgment of the court." Now, from the inherent
difficulty, if not the *utter impossibility,* of ascertaining this
" real or true value," together with the absence of any cir-
culating medium, which is a proper *measure* or *standard* of
value *at the time* of the sale in question, and from the con-
sequent *lack* of any *market value* for cotton at Tuskaloosa,
in March, 1865, in United States treasury-notes or gold,
the evidence of the value of any commodity, both before
and after the period of sale, (the only time when such value
could be measured in present currency,) is clearly admis-
sible. To forbid the jury, in the language of the charge
asked for, even " to look at" such testimony, with the view
of enlightening their knowledge upon so difficult a matter,
would have infringed upon their prerogative under the pecu-
liar circumstances ; and would in effect have given so nar-
row and illiberal construction to the ordinance in question
as to *defeat the very purpose of its enactment.*

JUDGE, J.—1. Scott, the drawee of the bill in this case,
is not a party to this suit ; and no question arises as to his
liability on the alleged ground that Knott acted solely as
his agent in making the purchase of the cotton, and in
drawing the bill. Whether parol evidence might be re-
ceived, and if so, to what extent, to fix such a liability
upon Scott in an appropriate proceeding for that purpose,
we need not now determine. The question is, as to the
liability of the defendant below, as drawer, notwithstand-
ing his agency, and whether the circuit court erred in the
charge given relating to this question.

The court charged the jury, that in determining whether
the defendant below acted for himself, or as the agent of
Scott, in drawing the bill, "nothing could be looked to but
the draft itself; and that the legal effect of the draft was,
that the defendant was personally bound."

Irrespective of the question that the bill of exceptions

does not purport to set out all the evidence in the cause, and that therefore we should presume in favor of the correctness of the charge, we remark, that nothing appears upon the face of the draft, nor does the record show there was any evidence before the jury, tending to show that it was the intention of the parties, *in the execution of the draft,* not to bind the defendant personally, but Scott alone. Whether under the circumstances—there being nothing upon the face of the draft to authorize it—parol evidence would have been competent or not, to show such an intention, or understanding, we do not decide. But see the following authorities : *Lazarus v. Shearer,* 2 Ala. 718 ; *Drake v. Flewellen,* 33 Ala. 106 ; *May v. Hewitt, Norton & Co.,* 33 Ala. 761 ; *McTyer v. Steele,* 26 Ala. 487 ; *Seay v. Marks,* 23 Ala. 532 ; *Roney's Adm'r v. Winter,* 37 Ala. 277 ; *Crutcher v. Memphis & Charleston Railroad Company,* 38 Ala. 579 ; *Leadbetter v. Tarver,* 5 Maule & S. 349. The testimony, it is true, did tend to show that the defendant acted as the agent of Scott in the transaction which gave rise to the draft. But this agency did not exclude, nor was it inconsistent with that personal liability on the part of the defendant which the language of the draft imparts. This charge of the court, therefore, when construed in reference to the testimony, contains no error.

This view also disposes of the first and second charges requested by the defendant, and refused by the court, and which relate to the same question.

2. A bill of exchange, payable *at sight,* whether foreign or inland, is entitled to days of grace, and must be presented for acceptance within a reasonable time, before payment thereof can be demanded.—*Hart v. Smith,* 15 Ala. 807. And what is a reasonable time, depends upon the circumstances of each particular case.—Chitty on Bills, m. p. 278, and authorities cited in note 1. If acceptance be refused, on a proper presentation of the bill for that purpose, it is incumbent upon the plaintiff, in an action against the drawer or indorser, as a pre-requisite to his recovery, to prove due diligence in giving notice. A protest is not necessary by the law-merchant, to fix the liability of the parties to an inland bill—and such is the character of the

bill in this case.—Code, § 1549.  A demand of acceptance, or payment, and notice of refusal, is sufficient.—*Jordan v. Bell*, 8 Port. 53 ; *Evans v. Gordon*, 8 Port. 142 ; *Leigh v. Lightfoot*, 11 Ala. 935. But to *recover damages* on such a bill, it must be protested, and the fact averred in the declaration.—*Jordan v. Bell* and *Leigh v. Lightfoot, supra.*

It is not contended that the bill in this case was not presented for acceptance within a reasonable time ; but the position is taken that due notice of its dishonor was not forwarded to the drawer.

The facts are, that about the hour of ten o'clock a. m., Monday morning, the 27th of March, 1865, the payee presented the bill to the drawee, at his place of business in the city of Mobile, for acceptance, and that the drawee refused to accept or to pay it ; that the payee immediately handed the bill to a notary public, who, on the next day, Tuesday the 28th, caused it again to be presented, and protested for non-acceptance ; and that the drawer did not ask for time to consider, nor was any reason given for not protesting sooner after acceptance was refused.  The certificate of the notary shows, that on the day of the protest, he placed in the post-office at the city of Mobile, to be mailed, a notice thereof, directed to R. F. Knott, the drawer, at Tuskaloosa.

In cases where the parties reside at a distance, and the ordinary mode of communication is by general post, the universal rule now seems to be, that the holder, or party to give the notice, must forward notice by the post of the next day after the dishonor, or after he received notice of such dishonor ; and if there be no post on such next day, then he must send off notice by the very next post that occurs after that day ; but he is not legally bound, on account of there being no post on the day after he receives notice, to forward it on the very day he receives it. Chitty on Bills, m. p. 486 ; *Bray v. Hadman*, Maule & S. 68 ; *Geill v. Germany & Blugg*, Mood. & M. 61.  See, also, *Whitman v. Farmer's Bank of Chattahoochee*, 8 Port. 258 ; *Crawford v. Branch Bank at Mobile*, 7 Ala. 205.  Furthermore, if the notice be placed in the proper post-office in due time, it is legal diligence ; the holder or party to give

the notice, not being responsible for the irregularities of the mail.—*Ellis v. Com. Bank,* 7 Howard, Miss. 294; *Lord v. Appleton,* 3 Shep. 270; *Bell v. The Hagerstown Bank,* 7 Gill. 216.

The holder, in this case, might have forwarded notice of the dishonor by post, on the next day, the 28th, after the refusal to accept, *without protest;* but though an inland bill, it was his legal right to have it protested; and the notice of protest having been placed in the post-office properly directed, on the *same day,* the 28th, that the notice of dishonor without protest would have been required to be mailed, we hold that legal diligence was used in giving notice.

We do not consider it necessary to determine the question, whether, under the particular facts of this case, the notice would not have been sufficient, if it had been mailed on the 29th, the day after the protest.

It results from what we have said, that the circuit court did not err in the refusal to give the third, fourth, and fifth charges requested by the defendant.

3. The third affirmative charge of the court, as to the evidence, the jury might look to in determining the value of the cotton at the time and place of sale, seems to have been predicated upon the evidence designated in the charge, and which had gone before the jury, without objection. If there was error in this charge, it was not prejudicial to, but in favor of the defendant.

As to the sixth and seventh charges requested by the defendant, relating to the same matter, no action of the court appears to have been had thereon, nor is there any exception in relation thereto; we, therefore, do not consider them.

Judgment affirmed.