## GWATHMAY and others *v.* CLISBY and others.

*(Circuit Court, S. D. New York. May 20, 1887.)*

1. **STATUTE—CONSTRUCTION—BILL OF EXCHANGE—CODE ALA. 1876, § 2094.**

    Code Ala. 1876, § 2094, provides that "bills of exchange and promissory notes, payable in money at a bank or private banking-house, or a certain place of payment therein designated, are governed by the commercial law." *Held,* on examination of the provisions of the laws of Alabama *in pari materia,* and the antecedent legislation of the state upon the same subject, that the qualifying words, "payable in money at a bank," etc., apply only to promissory notes, and that negotiable bills of exchange, whether payable at a specified place of payment or not, are still governed by the general commercial law.

2. **SAME—COMMON-LAW RULE.**

    The common law of negotiable paper will not be deemed altered by statute so as to subject a bill of exchange, in the hands of a *bona fide* purchaser for value, to the equities existing between the original parties, unless the statute evinces an intention to do so in clear and peremptory terms.

*Thomas G. Sherman,* for plaintiffs.

*Wm. P. Chambers,* for defendants.

WALLACE, J. This case is here upon the motion of the plaintiffs for a new trial on exceptions to the rulings of the referee by whom the case was tried. The action is brought upon a bill of exchange drawn upon defendants, and accepted by them, at Montgomery, Alabama. The referee found that the acceptance of the bill was obtained by fraud and without consideration, but that the plaintiffs received the bill without actual notice of any defense thereto, or of any equities existing between the drawers thereof and the payee in part payment of an antecedent indebtedness of the drawers. He decided that under the law of Alabama the bill of exchange was not a negotiable instrument, and was not governed by commercial law, because it was not by its terms payable at a certain place of payment therein designated.

The only question which it is necessary to consider is whether bills of exchange are "governed by the commercial law," within the meaning of section 2094 of the Code of Alabama of 1876, when they are not by their terms payable at a certain place of payment designated. If they are, as the plaintiffs were holders in good faith and for value, according to the decisions controlling upon this court, the bill of exchange in their hands was not subject to the equities existing between the original parties. *Swift* v. *Tyson,* 16 Pet. 1; *Railroad Co.* v. *National Bank,* 102 U. S. 14. The language of the section is as follows:

"Sec. 2094. Bills of exchange and promissory notes, payable in money at a bank or private banking-house, or a certain place of payment therein designated, are governed by the commercial law."

It is plain, upon the maxim *expressio unius est exclusio alterius,* that promissory notes are not governed by the law of commercial paper, under this section, unless they are made payable at a bank or private banking-

house, or some other designated place of payment. The inquiry is whether, by the terms of the section, the same conditions apply to bills of exchange. It is somewhat surprising that, so far as is known, this question has never been decided by the courts of the state of Alabama, and that it should devolve upon a foreign tribunal to place a construction for the first time upon the meaning of a law of Alabama which has been in force since 1852, affecting a subject so important as the rights and obligations of parties to a bill of exchange.

Reading the section without the assistance of other provisions of the laws of Alabama *in pari materia*, or of antecedent legislation upon the same subject, the question presented would be one of much doubt. The punctuation would favor the view that bills of exchange and promissory notes are both governed by the restrictive terms. But, in arriving at the real meaning of statutes, the courts disregard punctuation, and read statutes with such stops as are most consistent with the sense. In other words, punctuation is no part of the statute. *Hammock* v. *Loan & Trust Co.*, 105 U. S. 77. It was undoubtedly the purpose of the section to change the rule of the common law respecting the attributes of promissory notes. If a like intention can be gathered with respect to bills of exchange, it is because both classes of commercial paper are associated together in the section. But this consideration does not advance the inquiry, because the point is whether the qualifying words apply to both classes, or only to promissory notes.

The plaintiff invokes the rule of construction, sometimes resorted to, that relative words must ordinarily be referred to the next antecedent, where the intent upon the whole statute does not appear to the contrary. Broom, Leg. Max. 680; Dwar. St. 590, 591; *Cushing* v. *Worrick*, 9 Gray, 383. This rule is not controlling, and has often been disregarded; and it is not necessary to place the decision of the question upon such a narrow consideration.

The Code of 1876 is a revision of pre-existing legislation. It succeeded the Code of 1867, and, like that Code, was authorized by an act of the general assembly which contemplated that the substance and meaning of former statutes should remain unchanged. When a codification or revision of laws contains provisions which are substantially reproduced from previous acts of the legislature, and doubts arise from the ambiguity of the language employed, the safest rule by which to ascertain the meaning is to resort to the original sources for the purpose of ascertaining the legislative intent. *U. S.* v. *Bowen*, 100 U. S. 508. To quote the language of the supreme court of Alabama in *Landford* v. *Dunklin:*

"No rule of statutory construction rests upon better reasoning than that, in the revision of statutes, alteration of phraseology, or the omission or admission of words, will not necessarily change the operation or construction of former statutes. The language of the statute as revised, or the legislative intent to change the former statute, must be clear, before it can be pronounced that there is a change in such statute in construction and operation." 71 Ala. 609.

As said by the court in *East Tennessee* v. *Hughes*, 76 Ala. 590:

"Unless the alteration of the original act is of such a character as to manifest a clear intent to make a change in the construction and operation, effect will be given to the statute as originally framed by the general assembly."

Section 2094 is a reproduction of section 1525 of the Code of 1852, as amended in 1873, which, as will be seen, did not exclude bills of exchange when not payable at any designated place from the category of instruments governed by the commercial law. The origin of the legislation in reference to the general subject is found in the act of January, 15, 1828, which reads as follows:

"*  *  * Hereafter the remedy on bills of exchange, foreign and inland, and on promissory notes payable in bank, shall be governed by the rules of the law-merchant as to the days of grace, protest, and notice."

This provision was supplemented by an act of 1832 reading as follows:

"Bonds and other instruments payable in bank shall be governed by the rules of the law-merchant as to days of grace, demand, and notice, in the same manner that bills of exchange and notes payable in bank now are."

The grammatical construction of the act of 1828 plainly limits the qualifying words, "payable in bank," to promissory notes. And the statute is not to be construed as altering the common law, or making any innovations therein, further than the words import. *Shaw* v. *Railroad Co.*, 101 U. S. 557. Accordingly, by the reasonable interpretation of the acts of 1828 and 1832, bills of exchange were governed by commercial law, and so, also, were all other instruments when payable in bank, including promissory notes. That this was the true meaning and result of the legislation is made still more clear by the Code of 1852. That Code was not merely a revision of laws previously enacted, but a code in the wider sense, for the adoption of a body of laws "having regard to the general system and true spirit of the existing laws" of the state. Two sections of that Code are to be considered together as being *in pari materia*. Section 1525 read as follows:

"Bills of exchange and promissory notes payable, in money, at a bank or private banking-house, are governed by the commercial law, except so far as the same is changed by this Code."

Section 2129 was as follows:

"Every action founded upon a promissory note, bond, or other contract, express or implied, for the payment of money, must be prosecuted in the name of the party really interested, whether he have the legal title or not, subject to any defense the payor, obligor, or debtor may have had against the payee, obligee, or creditor, previous to notice of the assignment or transfer; but this clause does not apply to bills of exchange or instruments payable in bank, or at a private banking-house."

Section 1525 would not, of itself, be decisive of the present inquiry; but it is to be observed that section 2129, which is the first provision in the laws of Alabama by which negotiable paper of any class was explicitly placed on the footing of other contracts for the payment of money, so far as to be subject in the hands of a purchaser to the equities existing between the original parties, makes a distinction between bills of exchange and all other instruments. The section declares that the clause

is not to apply "to bills of exchange *or* instruments payable in bank," etc. It was unnecessary to enumerate bills of exchange unless this distinction was contemplated. They would have been included in the term "instruments," and unless the provision was intended to discriminate between them and other instruments payable in bank, or at a private banking-house, there was no reason for specially mentioning them. It is a cardinal rule, in the construction of statutes, that every part shall be regarded and be so expounded, if practicable, as to give some effect to every part. Promissory notes were not mentioned in the proviso because they were included in the general designation of "instruments." When payable in bank, or at a private banking-house, they were within the exception, although not specifically mentioned; when not so payable, they fell within the general clause. Bills of exchange were mentioned, to emphasize the distinction created by the act of 1828. If this had not been the purpose, the word "other" would probably have been inserted between the words "or" and "instruments." Sections 1525 and 2129 reproduce the provisions of both the previous acts, but it is only in section 2129 that effect is given to the provisions of the act of 1832.

Section 1525 of the Code of 1852 was amended in 1873 so as to read as follows:

"Bills of exchange and promissory notes payable, in money, at a bank, *or certain place of payment therein designated,* are governed by the commercial law."

Section 2094 of the Code of 1876 reproduces the language of section 1525 of the Code of 1852, as thus amended in 1873. It is to be read in connection with section 2890, which is a reproduction of section 2129 of the Code of 1852. Section 2890 reads as follows:

"Actions upon promissory notes, bonds, or other contracts, express or implied, must be prosecuted in the name of the party really interested, whether he has the legal title or not, subject to any defense the payor, obligor, or debtor may have had against the payee, obligee, or creditor previous to notice of assignment or transfer; except in actions upon bills of exchange, promissory notes payable in bank, or in a designated place of payment, and commercial instruments, in which cases the suits must be instituted in the name of the persons having the legal title."

By the grammatical construction of this section neither bills of exchange, nor other commercial instruments except promissory notes, are required to be payable in bank, or at a designated place of payment, to fall within the exception.

It is apparent from this collocation of statutes that none of them exhibit any clear intention to restrict the negotiability of bills of exchange, and that the tendency of the legislation of the state has been to enlarge the negotiability of promissory notes since 1852, when they were negotiable only when payable at a bank or private banking-house, and to enlarge the negotiability of other commercial instruments which, by the Code of 1852, were placed in the same category with promissory notes, but were withdrawn, apparently, by section 2890 of the Code of 1876.

The cases of *Cook* v. *Mutual Ins. Co.,* 53 Ala. 37, and *Oates* v. *National*

*Bank,* 100 U. S. 239, are cited in support of the contention of the defendants. Both of these cases were upon promissory notes. There was no occasion to consider the point whether bills of exchange under the statutes of Alabama were governed by commercial law or not, and the point was not considered, directly or inferentially. On the other hand, the case of *Knott* v. *Venerable,* 42 Ala. 186, is cited in support of the position of the plaintiff. That was a suit on an inland bill of exchange which was not payable at any particular place. The questions litigated related to presentation for acceptance, and to demand and protest. The court held that in these regards the paper was governed by the ordinary rules of commercial law. No reference was made in argument, so far as appears, or in the opinion of the court, to the Code provisions; but it is urged that it can hardly be supposed that section 1525 of the Code of 1852, which had been in force for 13 years when that case was decided, would have been overlooked if the court had supposed that that section was intended to deprive bills of exchange of their ordinary attributes.

In the absence of any decision of the courts of Alabama which can be deemed authoritative upon the present question, the duty has devolved upon this court of deciding it by the aid of the best light of which it is possessed. The conclusion reached is not altogether satisfactory, but it is one which seems most reasonable after a very full consideration. The rules of the common law are not to be changed by doubtful implication, and especially should the courts be slow to impute an intention to a statute, not evidenced by clear, unambiguous, and peremptory language, to change the law of commercial paper which circulates largely in foreign states, among those who are not supposed to be familiar with restrictions peculiar to the local law of the state where it may be made, or may be payable.

The exceptions to the rulings of the referee are sustained, and the motion for a new trial is granted.