# Ledbetter *v.* Thomas.

*Action of Trover against Bailee for Conversion and
Injury to Animal.*

1.  *Trover; what constitutes conversion by a bailee.*—Where a per-
    son hires an animal for a specified kind of work for a definite
    time, and in violation of the bailment such person uses it
    for other and different labor, or for a time longer that that
    specified, such unauthorized use by the bailee is a con-
    version of the animal for which the bailor may maintain
    trover for its value.

2.  *Same; same; case at bar.*—In an action of trover to recover
    damages for the alleged conversion of a mule, the evidence
    showed that the plaintiff had rented said mule, together with
    its mate, to the defendant, for the purpose of plowing them,
    at the rate of 25 cents per hour, and the plaintiff was to
    furnish a driver; that after three days the driver furnished
    by the plaintiff was taken sick and the defendant sent the
    team back to the plaintiff with a note in which he said that
    "if you can let me have the team for the balance of week,
    I will let" a person the defendant had hired, plow it. The
    team was sent back, it was not returned at the end of the
    week, but was plowed a part of the day on Monday; and that
    evening the mule involved in the controversy was taken sick
    and died. *Held:* That the acceptance by the plaintiff of

the terms proposed in the note extended the operation of the bailment until Saturday night and no longer; that the use of the mule by the plaintiff on the following Monday, in the absence of all proof of consent by plaintiff of its use on that day, was unauthorized, and, therefore, constituted a conversion for which the defendant is liable in an action of trover. (Tyson, J., *dissenting*.)

Appeal from the City Court of Anniston.

Tried before the Hon. James W. Lapsley.

This was an action of trover brought by the appellant, J. C. Ledbetter, against the appellee, J. T. Thomas, to recover one hundred and fifty dollars damages "for the conversion by him on the 20th day of August, 1900, of one gray mare mule, the property of the plaintiff."

On the trial of the cause upon the plea of the general issue, the plaintiff, as a witness in his own behalf, testified that he knew the mule involved in the suit; that he had hired said mule, together with its mate as a team to the defendant Thomas at 25 cents per hour; that the plaintiff was to furnish a driver, and "that they were to work to a two-horse Oliver chilled plow;" that after three days the team was sent back and he was delivered the following paper: "Mr. Ledbetter.— Dear Sir: Will says that he is not able to do a day's work, and I think correct. I have hired Bud Williams by the month, and if you can let me have the team for the balance of the week I will let him plow it. He can move his things in your wagon this eve. You can telephone me from Lewis' shop. Aug. 14. [signed.] J. T. Thomas."

The plaintiff further testified · that after receiving said note he let Bub Williams take the mules back to the farm where Thomas was working; that the gray mare mule alleged to have been converted was not returned to him at the end of the week, and that on Monday of the week following he was told that the mule was dead; that he had no communication with Thomas from the time Bud Williams carried the team back to him unitl after the death of the mule.

Upon the cross-examination the plaintiff testified that he hired the team at 25 cents per hour and there was

no understanding as to how long Thomas was to keep them.

Bud Williams, as a witness for the plaintiff, testified that after he carried the mules back to the defendant he plowed them on Thursday and Friday to a two-horse plow and on Saturday and a part of Monday he plowed them to a three-horse riding plow.

The defendant, Thomas, as a witness in his own behalf, testified that he agreed to pay the plaintiff 25 cents per hour for the team and driver for the purpose of plowing his land; that no kind of plow was mentioned nor was any length of time specified for him to use the team; that the driver furnished by the plaintiff was taken sick and that was the occasion of his sending the team back to the plaintiff; that a three-horse plow was easier to work with three mules than a two-horse with two mules; that he did not work the team too hard, but took good care of it; that he did not hire the team to be used for only one week, and no agreement was made that it would be returned Saturday; that after writing the note he never saw or had any conversation with the plaintiff.

The court refused to give the following written charges requested by the plaintiff, to the refusal to give each of which the plaintiff separately excepted: (1.) "If the jury believe from the evidence that the mule was worked to a different plow than the one for which it was hired, then the plaintiff would be entitled to recover." (2.) "If the jury believe from the evidence that defendant used the mule after the time expired under the written contract, they must find for the plaintiff."

At the request of the defendant the court gave to the jury the following written charges, to the giving of each the plaintiff separately excepted:  (1.) "The court charges the jury that if they believe from the evidence that Thomas worked the mule on Monday under the contract with Ledbetter, they must find the issues in favor of the defendant."  (2.)  "The court charges the jury that if Ledbetter consented to the use of the mules on Monday by Thomas, then they must find for the defendant."  (3.)  "The court charges the jury that the burden is on Ledbetter to show that Thomas used the

mules in violation of the contract, and unless he discharges the burden and shows a violation of the contract by Thomas, then the jury must find for the defendant." (4.) "The court charges the jury that the burden is on the plaintiff to establish his case to the reasonable satisfaction of the jury, and unless he has done so, the jury must find for the defendant." (5.) "The court charges the jury that Ledbetter had the right to take his mules back at any time, and that Thomas could use them until Ledbetter notified him not to use them any longer." (6.) "The court charges the jury that if Ledbetter hired the mules to Thomas for an indefinite time to be used in breaking the land, then Thomas had a right to use the mules until Ledbetter notified him to quit using them, and unless Ledbetter did notify him to quit using them, then the jury must find for defendant."

There were verdict and judgment for the defendant. The plaintiff appeals, and assigns as error the rulings of the court to which exceptions were reserved.

KNOX, BOWIE & BLACKMON and E. H. HANNA, for appellant, cited *Fail v. McArthur*, 31 Ala. 26; *Hooks v. Smith*, 18 Ala. 388; *Fox v. Young*, 22 Mo. App. 386; *Lane v. Cameron*, 38 Wis. 603.

W. P. ACKER, *contra*.

TYSON, J.—The fact that defendant received the mules from the plaintiff's possession creates a *prima facie* presumption of ownership of them by the latter.

A majority of the court hold that the letter, taken in connection with the acceptance by the plaintiff of the terms proposed in it, extended the duration of the bailment until Saturday night and no longer, and that the use of the mule by the defendant on the following Monday, in the absence of all proof of consent by plaintiff of its use on that day, was unauthorized and, therefore, a conversion for which he is liable in this action. Their opinion is that the proposition contained in the letter, after its acceptance by plaintiff, became a bind-

[Ledbetter v. Thomas.]

ing contract between the parties as to the matters referred to in it, thereby modifying the original contract as to the length of time that the mules were to be used by defendant and as to the person who should drive them. That the plaintiff bound himself to permit the defendant to use the mules during the remainder of the week to be driven only and during that period by the person designated in the letter. That at the end of the week, the defendant was bound to return them to plaintiff, or, at least, not to plow them, and further, not to permit the person named in the letter to plow them on Monday following as the plaintiff only consented to his doing so the remainder of that week. This holding results in reversing the judgment for error in giving written charge No. 5 at the request of defendant.

While I concur in the reversal, I cannot concur in the construction placed upon the letter by the majority of the court. It is clear, and for that matter conceded, that it does not embody all the terms of the contract. The only matters involved in the contract between the parties referred to in it, was the change of drivers and a request that defendant be permitted to work the mules the remainder of the week. The original contract was a hiring by the hour, and which could of course be terminated by either party at the end of any hour, and until terminated by the one or the other, it continued in force. Construing the letter in the light of all the circumstances shown in evidence surrounding the making of the contract, of which it was a modification, there is nothing in it, which denotes an intention that the defendant was not to have the use of the mules after the expiration of the week. When the purpose for which it was written was accomplished, that of securing to defendant the right to the use of the mules during the remainder of the week, to be driven by the person named in it, in the absence of some positive act or assertion by the plaintiff terminating the bailment, it continued under the original contract. So, then, in my opinion, the right of the plaintiff to recover in this action is dependent upon whether the mule, alleged to have been converted by defendant, was used by him in violation of the terms

of the bailment. There is no dispute, that the mule was hired to plow a certain piece of land and that it was so used in a careful manner. The controverted fact is, what was the contract as to the way or manner it was to be used. The plaintiff testified, that it was agreed that the mule was to be worked, in conjunction with its mate, to a two-horse Oliver chilled plow. The de-defendant swears that no such agreement was made; that the kind of plow was not mentioned. The contract of bailment being in parol, it is a question for the jury to ascertain what was its term in this respect. If they find the disputed fact according to plaintiff's contention, the working of the mule to a three-horse riding plow, was a conversion for which the defendant was liable in this action.—*Cartlidge v. Sloan,* 124 Ala. 596, and authorities therein cited. On the contrary, should the jury find this controverted issue of fact in favor of the defendant, their verdict should be for him. Charge 1 refused to the plaintiff assumes the existence of this disputed fact, and predicated the plaintiff's right to recover solely upon the finding by the jury that the mule was worked to a different plow than the one for which it was hired, notwithstanding they may have found for the defendant on that issue.

Charges 1, 3 and 4 given at the request of defendant, each, in my opinion, assert correct propositions of law and were proper.

In the absence of evidence tending to show that the plaintiff consented to the use of the mule in the way it was used, charge 2 given at the request of defendant was error.

Charges 5 and 6 given for defendant asserted his right to use the mule until the plaintiff notified him not to use it longer, notwithstanding his manner of using it may have been in violation of the terms of his contract. If in violation of the terms of the bailment, it cannot be affirmed as matters of law that defendant had the right to use it to the prejudice of the plaintiff's right to recover for its conversion.

Reversed and remanded.